Daniel Dallas HAWKINS, Appellant,

v.

The STATE of Texas.

No. 571–03.

Court of Criminal Appeals of Texas, En Banc.

May 19, 2004.

Gaylyn Leon Cooper, Beaumont, for Appellant.

Betty Marshall, Assist. St. Atty., Matthew Paul, State's Attorney, Austin, for State.

## OPINION

KELLER, P.J., delivered the opinion of the Court in which MEYERS, PRICE, WOMACK, KEASLER, HERVEY, HOLCOMB and COCHRAN, JJ., joined.

## I. BACKGROUND

Appellant was convicted of possession of cocaine. He complained on appeal that the prosecutor made an improper comment regarding the application of parole law. The Court of Appeals agreed and reversed his conviction. In its petition for discretionary review, the State complains that the Court of Appeals conducted an improper harm analysis. We shall reverse.

### A. The complained-of argument

During argument at the punishment phase, the following colloquy occurred:

[PROSECUTOR]: One very important thing to remember has already been alluded to by Mr. Cooper and that is the page on the—about good time credit and parole. *We can't tell you how the Board of Prisons [sic] and Parole is going to handle this particular inmate and when he's going to be released.* The only thing we can tell you for sure because it's the only thing we know for sure is that he will do—whatever your sentence is, you know he will do at least a quarter. When his time—plus his good time credit equals a quarter, okay, so it would be less than a quarter, but that's what we know for sure, okay. I hope that makes sense to you. It's pretty clearly

written and explained here. But that's the one thing that we can tell you for sure, okay. *That when his good time and credit—his good time and actual time reaches one quarter of whatever you send back is what he will actually serve before he's released back into your community.*[1]

[DEFENSE COUNSEL]: Your Honor, I object to that. That is a misstatement of the law.

THE COURT: Sustained.

[DEFENSE COUNSEL]: Ask the jury to disregard that statement.

THE COURT: The jury is so instructed.

[DEFENSE COUNSEL]: And, again, your Honor, I move for a mistrial.

THE COURT: That's denied Mr. Cooper.

[PROSECUTOR]: I'm not sure what I misstated, your Honor.

THE COURT: You said that he would be released back into the community. That is improper Mr. Ross.

[PROSECUTOR]: That was a misstatement. I did not mean to say that. That is when he will be eligible to be released. I'm sorry for that. That's when he becomes eligible. That's what you know for sure, okay.

### B. Other relevant facts

In accordance with the law, the jury charge submitted the following instruction about parole:

Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good

---

1. Emphasis added.

behavior, diligence in carrying out prison work assignment, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served plus any good conduct time earned equals one-fourth of the sentence imposed. Eligibility for parole does not guarantee that parole will be granted.

It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

## C. The Court of Appeals opinion

The Court of Appeals held that the prosecutor's argument was improper because it specifically applied parole law to the defendant on trial.[2] It further held that the improper argument was not cured by the trial court's instruction to disregard because the argument violated a mandatory statute.[3] In support of this holding, the Court of Appeals quoted from *Cooks v. State:*

> Generally, improper jury argument may be cured by an instruction to disregard, unless "in light of the record as a whole it was extreme or manifestly improper, violative of a mandatory statute, or injected new facts harmful to the accused." [4]

The Court of Appeals then proceeded to conduct a harm analysis under Texas Rule of Appellate Procedure 44.2(b).[5]

In conducting its harm analysis, the Court of Appeals applied the three-factor test articulated in *Mosley v. State,* which balanced: (1) the severity of the misconduct, (2) measures adopted to cure the misconduct, and (3) the certainty of conviction absent the misconduct.[6] The Court of Appeals found the conduct to be severe because it violated a mandatory statute and because it was not an isolated incident, but was a repeated reference to how the law of parole would be applied to appellant.[7] The Court of Appeals stated that it could consider additional acts of misconduct in conducting the harm analysis, and it counted four sustained objections prior

**2.** *Hawkins v. State,* 99 S.W.3d 890, 901 (Tex. App.-Corpus Christi 2003).

**3.** *Id.*

**4.** *Hawkins,* 99 S.W.3d at 901 (quoting *Cooks,* 844 S.W.2d 697, 727 (Tex.Crim.App.1992), *cert. denied,* 509 U.S. 927, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1993)).

**5.** Rule 44.2(b) articulates the harm analysis for non-constitutional errors: "Any other er-

ror, defect, irregularity, or variance that does not affect substantial rights must be disregarded."

**6.** *Hawkins,* 99 S.W.3d at 901 (citing *Mosley v. State,* 983 S.W.2d 249, 259 (Tex.Crim.App. 1998), *cert. denied,* 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999)).

**7.** *Id.* at 901–902.

to the complained-of argument.[8] The Court of Appeals stated that "[t]hese improper arguments resulted from arguments outside the record, and on how parole was applied to appellant in an earlier case."[9] In addition, the Court of Appeals faulted the prosecutor for making, after the complained of argument, "yet another improper argument on a subject outside the record to which appellant objected and the trial judge instructed the jury to disregard."[10] The Court of Appeals did not give any additional details about these five arguments, but all five are included in our discussion in part II.B.2 of this opinion.

The Court of Appeals characterized the measures taken to cure the misconduct as "nothing more than cursory."[11] According to the Court of Appeals, the trial court simply said, "The jury is so instructed."[12] The Court of Appeals characterized this instruction as "tepid" and of "limited curative effect," especially in light of the other improper arguments for which instructions to disregard were given.[13] The Court of Appeals refused to give any weight to the prosecutor's apology regarding the error at issue in this case because: (1) it felt that "arguments of counsel cannot substitute for instructions by the court" and (2) it felt that considering the apology in the harm analysis "would have the effect of permitting a prosecutor to both create and cure error," which would "undermine any meaningful harm analysis" and "encourage

prosecutors to repeat the error with impunity."[14]

Regarding the third *Mosley* factor, the Court of Appeals found the certainty of appellant receiving his eighteen-year sentence to be low without the improper argument because the amount of drugs was low and the sentence was high.[15] In support of its assessment that the sentence was high, the Court of Appeals observed that the sentence was on the upper end of the two-to-twenty-year punishment range and the sentence would ordinarily have been a state jail felony—if it had not been enhanced by prior felony convictions.[16] Concluding that harmful error occurred, the Court of Appeals affirmed the conviction, reversed and remanded for a new trial on punishment, and declined to address appellant's sixth point of error.[17]

## II. ANALYSIS

### A. Error v. harm and the *Mosley* factors

■■■■ Although the Court of Appeals and the parties have approached the issue as one of harm, that is not a correct characterization of the issue before us. A harm analysis is employed only when there is error, and ordinarily, error occurs only when the trial court makes a mistake.[18] Here, the trial court sustained the defense objection and granted the requested instruction to disregard. The only adverse ruling—and thus the only occasion for

---

8. *Id.* at 902.

9. *Id.*

10. *Id.*

11. *Id.*

12. *Id.*

13. *Id.*

14. *Id.*

15. *Id.*

16. *Id.*

17. *Id.* at 903.

18. *But see State ex. rel. Eidson v. Edwards*, 793 S.W.2d 1, 6 (Tex.Crim.App.1990)(due process violation from prosecutor's failure to

making a mistake—was the trial court's denial of the motion for mistrial. Under those circumstances, the proper issue is whether the refusal to grant the mistrial was an abuse of discretion.[19]

■ Nevertheless, the question of whether a mistrial should have been granted involves most, if not all, of the same considerations that attend a harm analysis. A mistrial is the trial court's remedy for improper conduct that is "so prejudicial that expenditure of further time and expense would be wasteful and futile." [20] In effect, the trial court conducts an appellate function: determining whether improper conduct is so harmful that the case must be redone. Of course, the harm analysis is conducted in light of the trial court's curative instruction. Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required.[21]

The federal courts have recognized the interplay between a trial court's curative actions and an appellate court's harm analysis in the argument context. This Court has joined that recognition by applying federal precedent in connection with argument error that is analyzed under Rule 44.2(b). Employing a harm analysis formula in evaluating the trial court's ruling on a motion for mistrial seems especially appropriate in the argument context, where misconduct occurs near the end of the case—giving the trial court an appellate-like "bird's eye" view of the situation. We therefore agree that the *Mosley* factors should be used to evaluate whether the trial court abused its discretion in de-

nying a mistrial for improper argument, at least in cases like this one, in which constitutional rights are not implicated.

■ Moreover, we also agree with the Court of Appeals that an appropriately tailored version of the *Mosley* factors applies in the non-capital trial punishment phase context. We have already applied a tailored version of the *Mosley* factors to the punishment phase of a capital trial,[22] and we see no impediment to applying these factors to punishment proceedings in a non-capital case. Therefore, we apply the test as it has been tailored for punishment proceedings. We balance three factors: (1) the severity of the misconduct (prejudicial effect), (2) curative measures, and (3) the certainty of the punishment assessed absent the misconduct (likelihood of the same punishment being assessed).[23]

### B. Severity of the misconduct

#### 1. *Effect of statutory violation*

■ We disagree, however, with the Court of Appeals's construction and application of these factors. First, the Court of Appeals appears to have misapprehended the nature of the "severity of the misconduct" factor. In *Mosley*, we identified "severity of the misconduct" with "the magnitude of the prejudicial effect of the prosecutor's remarks." [24] In *Martinez*, *Mosley's* punishment phase progeny, we continued to equate "severity of the misconduct" with its prejudicial effect.[25] Prejudice is clearly the touchstone of the first factor in the *Mosley* test. To be

recuse himself could result in reversal even if trial court lacks the power to force recusal).

19. *Simpson v. State*, 119 S.W.3d 262, 272 (Tex.Crim.App.2003).

20. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim.App.1999), *cert. denied*, 529 U.S. 1070, 120 S.Ct. 1680, 146 L.Ed.2d 487 (2000); *Simpson*, 119 S.W.3d at 272.

21. *Simpson*, 119 S.W.3d at 272.

22. *Martinez v. State*, 17 S.W.3d 677, 693–694 (Tex.Crim.App.2000).

23. *Id.*

24. 983 S.W.2d at 259.

25. 17 S.W.3d at 693.

sure, particularly offensive or outrageous conduct generally gives rise to a natural inference of prejudice and can be considered as such, even when prejudice is not otherwise apparent from the record. But the Court of Appeals erred in assessing "severity" in isolation from prejudice. The Court of Appeals's opinion suggests that the prosecutorial misconduct was "severe" simply because it violated a "mandatory statute." In the Court of Appeals's estimation, that fact alone prevented it from being cured by an instruction to disregard. But a prohibition's source—whether it be statute, rule, or common law—is not particularly relevant to how prejudicial an argument is or whether an instruction to disregard can cure the argument's prejudicial effects. A prohibition that begins as a common law requirement or a court rule may later become a statute or vice versa. Nor is the "mandatory" nature of a statute particularly relevant. If a statute imposes requirements, then it is mandatory, and most criminal statutes could be properly characterized as such.

In fact, the "mandatory statute" mantra that the Court of Appeals cites is based on questionable lineage and is inconsistent with more recent precedent and with changes in the appellate rules. While *Cooks* did indeed say that violations of mandatory statutes are exempt from the curative power of instructions to disregard,[26] the cases the opinion cited for that proposition—*Borjan v. State*[27] and *Kinnamon v. State*[28]—do not support it. In *Bor-*

*jan*, the defendant's objection to the allegedly improper argument was overruled.[29] During its discussion, the Court stated, "An improper argument constitutes reversible error when in light of the record as a whole it was extreme or manifestly improper, violative of a mandatory statute, or injected new facts harmful to the accused into the trial proceedings."[30] Nowhere in this discussion did the Court mention instructions to disregard.[31] There was no reason to, since the objection was overruled. Moreover, with the word "thus," the Court then launched immediately from its "mandatory statute" statement into a discussion about whether the prosecutor's argument was improper, as if the Court's statement related to error rather than to harm,[32] and the Court ultimately concluded that the prosecutor's argument was a proper plea for law enforcement.[33] Further, the Court's statement was *dicta* because violation of a mandatory statute was not at issue in the case, and, if the Court's statement really did refer to harm, it was *dicta* for that reason as well.

*Kinnamon* did address the effectiveness of an instruction to disregard.[34] But, omitting any reference to a "mandatory statute," the opinion stated the rule for reversible argument error as: "in order for an improper argument to rise to a level mandating reversal, the argument must be 'extreme or manifestly improper, or inject new and harmful facts into evidence.' "[35] Moreover, contrary to *Cooks*'s language, *Kinnamon* suggested that an instruction

26.  *Cooks,* 844 S.W.2d at 727.

27.  787 S.W.2d 53 (Tex.Crim.App.1990).

28.  791 S.W.2d 84 (Tex.Crim.App.1990), overruled on other grounds, *Cook v. State,* 884 S.W.2d 485 (Tex.Crim.App.1994).

29.  787 S.W.2d at 54–55.

30.  *Id.* at 56–57.

31.  *Id., passim.*

32.  *Id.* at 57.

33.  *See id.* at 57–58.

34.  791 S.W.2d at 89.

35.  *Id.*

to disregard *can* cure the two types of egregiously improper argument cited,[36] and in fact *did* cure an improper argument that injected new facts into the case.[37]

We also point out that the "mandatory statute" language in *Cooks* was *dicta* because no mandatory statute was violated by the State's arguments in that case.[38] So, *Cooks's* statement was *dicta* based upon a misreading of *dicta* in other cases. Moreover, *Cooks* seems to be an anomaly in a line of cases that have recited the "mandatory statute" language in connection with "reversible error" but have not contended that such error is incurable.[39]

Aside from *Kinnamon*, two cases that have addressed the effectiveness of an instruction to disregard in this context are *Thompson v. State*[40] and *Wesbrook v. State*. *Thompson* is ambiguous at best because, after citing the three types of reversibly improper arguments,[41] the Court found "no reversible error, *especially* in light of the court's instruction to the jury to disregard the remark."[42] While *Thompson* may be ambiguous, *Wesbrook* is clearly at odds with *Cooks*. In *Wesbrook*, the Court recited the refrain that improper argument is not reversible "unless, in light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial."[43] Even though the prosecutor's argument injected new facts into the case, the Court found that the impropriety was cured by the trial court's instruction to disregard.[44] The Court emphasized that only "offensive or flagrant error warrants reversal when there has been an instruction to disregard" and the comment before us was "not so flagrant that the instruction to disregard was ineffective."[45]

However, the three-fold refrain is problematic even when it simply refers to reversible error rather than to incurable error. The refrain traces its lineage back through *Todd v. State*,[46] to *Vineyard v. State*,[47] and ultimately to *Bowlin v. State*,[48]

---

36. *Id.*

37. *Id.* ("Although the State's comment further strained an already tenuous connection between the evidence as presented and an appropriate summation or deduction from that evidence [citations omitted], it did not inject any new or harmful facts that were not cured by the court's instruction").

38. 844 S.W.2d at 728–729.

39. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex.Crim.App.2000), *cert. denied*, 532 U.S. 944, 121 S.Ct. 1407, 149 L.Ed.2d 349 (2001); *Allridge v. State*, 762 S.W.2d 146, 155 (Tex. Crim.App.1988), *cert. denied*, 489 U.S. 1040, 109 S.Ct. 1176, 103 L.Ed.2d 238 (1989); *Todd v. State*, 598 S.W.2d 286, 297 (Tex.Crim.App. 1980); *Threadgill v. State*, 124 Tex.Crim. 287, 294–295, 61 S.W.2d 821, 824 (1933); *Vineyard v. State*, 96 Tex.Crim. 401, 404, 257 S.W. 548, 550 (1922).

40. 480 S.W.2d 624 (Tex.Crim.App.1972).

41. 480 S.W.2d at 630 ("whether (1) the argument is manifestly improper, harmful and prejudicial, (2) it is violative of a statute, or (3) it injects a new and harmful fact into the case").

42. *Id.* (citation omitted; emphasis added).

43. 29 S.W.3d at 115.

44. *Id.* at 115–116.

45. *Id.* at 116.

46. 598 S.W.2d at 297. *See Wesbrook*, 29 S.W.3d at 115 (citing *Todd*); *Allridge*, 762 S.W.2d at 155 (citing *Todd*).

47. 257 S.W. at 550. *See Cooks*, 844 S.W.2d at 727 (citing *Borjan*); *Borjan*, 787 S.W.2d at 57 (citing *Vineyard*); *Todd*, 598 S.W.2d at 297 (citing *Thompson*); *Thompson*, 480 S.W.2d at 630 (citing *Vineyard*).

48. 93 Tex.Crim. 452, 466, 248 S.W. 396, 404 (1922). *See Vineyard*, 257 S.W. at 550 (citing *Bowlin*).

which refers to cases collated in Branch's annotated Penal Code.[49] Some of the other cases cited along the way omit the "mandatory statute" part of the refrain.[50]

But the real problem is discovered by examining *Bowlin*. In that case, the prosecutor argued that the defendant's brother did not testify for the defendant because he had participated with the defendant in committing the crime.[51] The Court declined to find the argument improper: "Viewed in the light of the entire record we cannot regard the argument complained of as improper. In whatever form it may have been stated to the jury it appears to have been a conclusion deducible from the evidence and not the assertion of some new fact."[52] Immediately following this pronouncement that the argument was proper, the Court said, "It is only in extreme cases that this court would feel called upon to reverse on account of argument of counsel unless he had violated some statutory provision or injected into the case facts of a harmful character which were not in evidence."[53] As support for this statement, the Court relied upon many cases "collated by Mr. Branch in his Ann. P. C., page 207, under Sec. 370." An examination of the 1916 edition of Branch's Annotated Penal Code, Vol I, p. 207 reveals a § 370 that is titled "Proper argument."[54] The annotations in this section all involve different types of argument that

had been held to be proper: comments upon facts in evidence, arguing the law as well as the facts, drawing reasonable deductions from the testimony adduced at trial, seeking a motive for facts legitimately in evidence, explaining to the jury why the court is required to charge on all issues, telling the jury not to arrive at a verdict by lot or chance, telling the jury to confine themselves to the testimony admitted and the charge of the court, telling the jury not to discuss facts not in evidence, and arguing that a pardoned witness's prior felony conviction affected his credibility.[55]

Thus, it is apparent that the Court's statement regarding extreme arguments, statutory violations, and new facts related to *error*, not harm. The Court was saying that a prosecutor's argument is *improper* only (1) in extreme cases (2) if a statute were violated, or (3) if harmful facts were injected into the case that were not in the record. The prosecutor's argument was proper because it fell within none of these categories. Although our current jurisprudence analyzes argument error by determining whether an argument falls within four *permissible* areas, as opposed to whether it falls within three *impermissible* areas, that current mode of analysis began in 1973 with *Alejandro v. State*, which drew together various authorities into the current framework.[56]

---

49. *Bowlin*, 248 S.W. at 404.

50. *Kinnamon*, 791 S.W.2d at 89 (no reference to violation of mandatory statute as a source of reversible error); *Kerns v. State*, 550 S.W.2d 91, 96 (Tex.Crim.App.1977)(same); *Stanchel v. State*, 89 Tex.Crim. 358, 361, 231 S.W. 120, 122 (1921)(same); *Henderson v. State*, 76 Tex.Crim. 66, 68, 172 S.W. 793, 795 (1915)(same). *See Cooks*, 844 S.W.2d at 727 (citing *Kinnamon*); *Todd*, 598 S.W.2d at 297 (citing *Kerns*); *Vineyard*, 257 S.W. at 550 (citing *Stanchel* and *Henderson*).

51. *Bowlin*, 248 S.W. at 403.

52. *Id.* at 404.

53. *Id.*

54. Branch's Ann. P.C., Vol. I, § 370, p. 207 (1916).

55. *Id.*

56. 493 S.W.2d 230, 231–232 (Tex.Crim.App. 1973).

Perhaps some of the confusion lies in the fact that the *Bowlin* Court did not stop with its citation to § 370. It continued its discussion by quoting a passage in a different section of Branch's annotations indicating that, even if an argument were improper, it would also have to be harmful to merit reversal: "It is further stated by him under Sec. 361, at page 204 that, 'Before a reversal would be authorized even on account of improper argument of state's counsel, that it must clearly appear that the remarks *were improper and* that they were of a *material character and* such as under the circumstances were *calculated to injuriously affect the rights of the [accused].*'"[57] Perhaps the Court failed to clearly distinguish between error and harm, or perhaps the passage relating to harm was simply added as an afterthought. In any event, the § 361 passage stated an entirely different test for harm than the three-fold refrain that has cropped up in later cases.

That the *Bowlin* court was concerned with error—or at most, error and harm together, without distinguishing between the two—is further supported by the Court's treatment of the argument issue in *Vineyard.* In that case, the defense objected to the prosecutor's argument, but the trial court declined to issue an instruction to disregard.[58] This Court initially phrased the issue as whether the argument was proper, but then added a reference to harm: "Whether the argument is proper or improper must necessarily depend upon the facts of the particular case.

From the record before us we cannot say the argument complained of was unwarranted, or of such manifest harmful character as to demand a reversal."[59] Immediately after this sentence and supporting citations, the Court introduced the three-fold refrain derived from *Bowlin,* which the careful reader should observe refers to "argument" rather than "improper argument":

> We think the only safe rule to be that this court should not hold an *argument* to be reversible error unless it is in extreme cases where the language complained of is manifestly improper, harmful and prejudicial, or where a mandatory provision of a statute is violated, or some new and harmful fact injected into the case.[60]

The Court's discussion shows its focus was on the propriety of the argument—or at most, on the propriety of the argument combined with its harmful effect—not, as later cases suggest, on the harmfulness of an argument that has already been determined to be improper.

We also note the negative phrasing of the rule in *Vineyard:* The Court did not say an argument was reversible error if one of the three conditions were met; it said the argument was *not* reversible error *unless* one of the three conditions were met. *Bowlin* contained similar language: *only* extreme arguments would result in reversal *unless* a statute were violated or new, prejudicial facts were injected. As

---

57. *Id.* (emphasis added). The actual wording in Branch differs slightly from the quotation in the *Bowlin* opinion: "Before a reversal can be had on account of improper argument of State's counsel, it must clearly appear that the remarks were *improper* and that they were of a material character and such as under the circumstances were calculated to injuriously affect the rights of the defendant." Branch's Ann. P.C., Vol. I, § 361, p. 204.

58. *Vineyard,* 257 S.W. at 550. The opinion does not elaborate on whether this means the objection was "overruled." *Id.*

59. *Id.*

60. *Vineyard,* 257 S.W. at 550 (citing *Stanchel, Henderson,* and *Bowlin* )(emphasis added).

phrased, the three-fold refrain may have invoked conditions that were necessary, but not sufficient for reversal.

The relevant wording of the three-fold refrain has mutated from "statute" in *Bowlin*, to "mandatory provision of a statute" in *Vineyard*, to "mandatory statute" in later cases. Similarly, the focus of the refrain has shifted through the years from error in *Bowlin* and *Vineyard*, to harmful error in *Todd* and later cases, to incurable error in *Cooks*. Moreover, the "mandatory statute" portion of the refrain is and always has been *dicta*. We are not aware of any decision reversing a case solely because the error involved a violation of a "mandatory" statute without regard to whether the error had any influence upon the jury's decision.

Moreover, the idea that violation of a "mandatory statute" constitutes automatic reversible error contradicts our developing harmless error jurisprudence. Almost twenty years ago, in *Almanza v. State*, we decried a trend "to label certain errors 'fundamental' then automatically reverse convictions without regard to the nature and harm of the error in the case."[61] In *Cain v. State*, we went further, holding that, aside from federal constitutional errors labeled by the Supreme Court as structural, no error is immune from a harm analysis.[62] Relying upon *Cain*, we have held that "violation of a mandatory statute does not, by itself, call for the reversal of a conviction."[63]

We also note that the three-fold refrain originated in cases decided before the formulation of the current harmless error rule relating to nonconstitutional errors,[64] and in fact precedes the previous harmless error rule for all errors.[65] We conclude that the "mandatory statute" part of the refrain has no place in our current harmless error scheme.[66]

### 2. Other prosecutorial arguments

We must also disagree with the Court of Appeals's contention that the effect of the improper argument before us was somehow magnified by the five other arguments to which the trial court sustained an objection.

The first sustained objection was for an argument that referenced a package deal of twenty years for three offenses. The pen packet does not show that there was plea agreement, but it does show that appellant pled guilty and received concurrent sentences. Whether there was an agreement for these sentences has no apparent relevance to the prosecutor's parole arguments. While one of the three sentences was for five years rather than twenty years, the prosecutor's mistake in referring to three concurrent twenty-year sentences, rather than two concurrent twenty-year sentences and a concurrent five year sentence, is of no real significance.

The second sustained objection pertained to the prosecutor's comment that "back then the system was a little different." When the trial court sustained the

---

61. 686 S.W.2d 157, 172–173 (Tex.Crim.App. 1985)

62. 947 S.W.2d 262, 264 (Tex.Crim.App.1997).

63. *Ford v. State*, 73 S.W.3d 923, 925 (Tex. Crim.App.2002).

64. TEX. R. APP. P. 44.2(b), effective September 1, 1997.

65. Former TEX. R. APP. P. 81(b)(2), effective September 1, 1986.

66. *See Taylor v. State*, 109 S.W.3d 443, 451 (Tex.Crim.App.2003)(pre-rules cases no longer controlling for nonconstitutional errors under the new rules).

objection and asked how the system was different, the prosecutor accurately responded that the range of punishment was five to twenty years, a range of punishment that does not currently exist. That range of punishment is reflected in the judgments on those prior offenses, and therefore, is not outside the record.

The third sustained objection was an interrupted comment, "But the Parole Board decided," with regard to appellant's prior twenty-year sentences. Even though there is no evidence of what the Parole Board decided, there is evidence that appellant was released early on his sentences. A mere reference to the Parole Board cannot be said to be significant, when the evidence about the early release was admissible.

The fourth sustained objection was for a comment that appellant "bargained and got 5 years in 1981." That comment was accurate and supported by the record as to the five-year punishment but was, perhaps, outside the record on the existence of a bargain. Again, the existence of an agreement was inconsequential.

The final sustained objection concerned the prosecutor's admonishment to the jury to reach a verdict. That the prosecutor started to tell the jury that failure to reach the verdict would cause the case to be tried again is not particularly prejudicial, if it is even improper, especially in light of the trial court's instruction to disregard.[67] It is widely known that a hung jury will result in further proceedings. Even if the jurors were not clear on whether the guilt proceedings would have to be repeated, the prosecutor's remark was interrupted

before that information was conveyed, and the trial court did instruct the jury to disregard the remark. More to the point, there is no apparent connection between this type of remark and the complained-of remark about parole.

Many of the points made in these five remarks were valid responses to opposing counsel's arguments.[68] Even when the remarks strayed from what was proper, they were not particularly egregious and, with the possible exception of the third comment, had no relevance to the complained-of argument about parole.

### 3. *Isolated v. repeated*

We also disagree with the Court of Appeals's contention that the error was not isolated, but part of a pattern. The lower court has misperceived both the nature of appellant's objection and the nature of the arguments made by the prosecutor. Appellant objected that the argument was a "misstatement of law," *not* that it was an improper attempt to get the jury to apply parole law to appellant. The latter complaint was procedurally defaulted by appellant's failure to raise it in an objection.[69] As for the former, the complained-of argument was in fact the only misstatement of the law about parole made by the prosecutor. And it appears to have been an accident. The prosecutor correctly stated the law moments before the complained-of argument and corrected his misstatement after the trial court pointed it out.

Even if a complaint had been preserved about improperly applying parole law to appellant, the complained-of argument is also the only instance in which that occurs.

67. *Brown v. State,* 692 S.W.2d 497, 502 (Tex. Crim.App.1985).

68. *See Martinez,* 17 S.W.3d at 693 (mildly improper comment not harmful where the main point of the comment was a valid one).

69. TEX. R. APP. P. 33.1(a)(1)(A)(objection must state grounds for ruling with sufficient specificity to make trial court aware of the complaint).

The law specifically provides that the jury may consider the existence of parole law and good time in making its punishment determination; the jury is simply prohibited from considering how parole law and good time would be applied to a particular defendant.[70] And the jury charge included an instruction to this effect as well as the other portions of the good time and parole law instructions required by statute. It was not improper for the prosecutor to accurately restate the law given in the jury charge nor was it improper for the prosecutor to ask the jury to take the existence of that law into account when assessing punishment.

### C. Curative measures

We also disagree with the Court of Appeals's characterization of the instruction "the jury is so instructed" as a "tepid" instruction of "limited curative effect." When counsel asks for a particular instruction and the trial court accedes to the request by saying "the jury is so instructed," that instruction will in most cases be considered effective to cure the harm from an improper argument. Moreover, the Court of Appeals's statement that this was the only curative action taken by the trial court is factually inaccurate. When the prosecutor asked what he had misstated, the trial court responded, "You said he would be released back into the community. That is improper." So, the trial court actually gave an additional admonition, pointing specifically to what the prosecutor said that was wrong. This admonition does not somehow become meaningless because it was elicited by the prosecutor.

■ Moreover, the prosecutor apologized and corrected himself after this additional admonition. The Court of Appeals

erred in failing to give any weight to the prosecutor's apology and retraction. Although a prosecutor's self-corrective action might not carry the same weight as a trial court's instruction to disregard, it is nevertheless a relevant consideration in determining harm and can, in the appropriate circumstances, render an improper comment harmless.[71] And this is not a case in which the prosecutor's retraction was the only curative action.

Further, the Court of Appeals also erred in failing to consider the jury charge. The charge properly instructed the jury on parole eligibility times and properly instructed the jury not to consider how good time and parole law would be applied to appellant.

Finally, as with the first *Mosley* factor, the Court of Appeals's analysis of the second factor is undermined by its misperception of the nature of appellant's objection. Appellant objected that the prosecutor misstated the law. The misstatement was that appellant would be released after his flat time and good time equaled one-fourth of his sentence. The defense objection that this was a misstatement was sustained, the trial court instructed the jury to disregard it, and when the prosecutor asked what he had misstated, the trial court specifically informed the prosecutor of the misstatement and that it was improper. Upon being informed of what he had misstated, the prosecutor apologized and corrected his misstatement. Under those circumstances, the jury surely understood that the prosecutor had misspoken, especially since the prosecutor had made a correct statement of the law moments before and did so again in retracting the misstatement. Moreover, the jury charge clearly and accurately set forth the

---

70. TEX. CODE CRIM. PROC., Art. 37.07 § 4(c).

71. *See Canales v. State*, 98 S.W.3d 690, 695–696 (Tex.Crim.App.2003).

law, which would have disabused the jury of any notion that appellant would automatically be released at the time he became eligible for parole.

Even if, however, we considered the prosecutor's comment as an improper attempt to get the jury to apply the law of good time and parole to appellant, we have found a more direct and egregious comment to that effect to be cured by an instruction to disregard.[72]

## D. Certainty of punishment assessed

The Court of Appeals found that the punishment assessed was not certain absent the misconduct. In arriving at this conclusion, the lower court considered the nature of the offense (possession of a small amount of contraband) and the amount of punishment imposed (eighteen years, two short of the maximum). But the Court of Appeals failed to consider appellant's numerous prior convictions: possession of marijuana, selling marijuana, robbery by assault, escape, aggravated robbery, delivery of a simulated controlled substance, and possession of a controlled substance. These offenses stretched from 1971 to 1998, and some were committed before the punishment on others had expired. Those prior convictions are a much more likely reason for the lengthy sentence than a corrected misstatement of the law of parole.

The Court of Appeals also did not consider the fact that appellant possessed a deadly weapon—a firearm—during the present offense. And this weapon was loaded with hollow point bullets, which the jury could believe were particularly dangerous.

## E. Balancing the factors

■ The error was isolated and not egregious. Curative action was taken by the court with two immediate instructions, by the prosecutor with an apology and retraction, and in the jury charge with a correct statement of the law and an admonition not to determine how good time and parole law would apply to appellant. And appellant's possession of a deadly weapon in the present offense plus a string of prior convictions handily explains the jury's eighteen year sentence in this case. Under the circumstances, the trial court was reasonable in believing that its instruction to disregard was effective and that appellant suffered no prejudice from prosecutor's improper remark. We conclude that the trial court did not abuse its discretion in denying the request for a mistrial.

The judgment of the Court of Appeals is reversed and the case is remanded for consideration of appellant's remaining point of error.

WOMACK, J., filed a concurring opinion in which HOLCOMB and COCHRAN, JJ., joined.

JOHNSON, J., filed a concurring opinion.

WOMACK, J., filed a concurring opinion in which HOLCOMB and COCHRAN, JJ., joined.

I join the opinion of the Court, which lays to rest the notion that the harmfulness of an error depended in some way on whether it was contrary to "a mandatory statute." The very term "mandatory statute" indicates the absence of thought behind it.

The Court's opinion mentions another *dictum* that, although is not essential to today's decision, is as nonsensical as the "mandatory statute." I refer to that which the Court calls "our current jurispru-

72. *Brown v. State,* 769 S.W.2d 565, 567 (Tex.    Crim.App.1989).

dence" that "analyzes argument error by determining whether an argument falls within four permissible areas," a "mode of analysis [that] began in 1973 with *Alejandro v. State,* which drew together various authorities into the current framework." [1]

The opinion for a narrow majority of the Court in *Alejandro* said:

> To receive the stamp of approval of this court, jury arguments need to be within the areas of: (1) summation of the evidence, e.g., [citations to two decisions]; (2) reasonable deduction from the evidence, e.g., [citations to two decisions]; (3) answer to argument of opposing counsel, e.g., [citations to two decisions]; and (4) plea for law enforcement, e.g.,[citations to two decisions]. The arguments that go beyond these areas too often place before the jury unsworn, and most times believable, testimony of the attorney. [2]

This surely is one of the most influential paragraphs in our jurisprudence, having been quoted (or closely paraphrased) hundreds of times in the opinions of this court and the courts of appeals. Its usefulness has not been much marred by its two flaws: it is obviously untrue, and it is logically invalid.

Anyone who has ever made, or even listened to, an argument in a criminal trial knows that there are more proper arguments than the four that are listed in *Alejandro.* I shall mention seven that are made in almost every trial: thanking the jury, telling the jury what procedure is now taking place, telling the jury what procedure will take place when the argument is concluded, re-reading portions of the charge of the court, explaining the charge in layman's language, applying the

law to the evidence, and distinguishing the evidence from hypothetical cases to which the charge might apply. None of these arguments are on the *Alejandro* list, but I'll wager that a case has never been tried to a jury in Texas in which at least one of them has not been made, and made with unquestioned propriety. They do not bring unsworn testimony before the jury.

The unquestioned propriety of these, and other, arguments is why they went unnoticed by the collector of the eight appellate decisions that were cited in *Alejandro.* Appellate opinions can be about only rulings on complaints that parties made at trial, or narrow classes of grave mistakes that a trial court committed without complaint. [3] If it were true that in all the decisions of this Court appellants complained unsuccessfully about only four classes of arguments, that could not justify the conclusion that only four classes of arguments can withstand complaint. About many arguments, no one complains.

Trying to define any class of proper procedures by looking at the decisions of appellate courts is like trying to describe the health of a people by looking into a hospital. If there is no problem, most cases don't go to either place. No one would believe the statement, made in reliance on a survey of all hospital patients in the state, "All Texans fall within four classes of health: the ill, the injured, the pregnant, and well babies." It might be wise for a hospital to prepare itself for those kinds of cases, but that's not the same as trying to deny that other kinds of people are in the population.

I think we have survived the *Alejandro dictum,* despite its falsity and fallacious-

---

1. *Ante,* at 80 (italics omitted).

2. *Alejandro v. State,* 493 S.W.2d 230, 231–32 (Tex.Cr.App.1973).

3. *See generally Marin v. State,* 851 S.W.2d 275, 277–80 (Tex.Cr.App.1993).

ness, because most of the serious cases get proper treatment. But I would welcome the correction of its statement about the four "areas" that "arguments need to be in" to "receive the stamp of approval of this court," just as I welcome today's decision to end the confusion about "mandatory statutes."

JOHNSON, J., filed a concurring opinion.

I concur in the judgment of the Court. I write separately to note how closely the prosecutor treads to the ethical line. In *Mosley v. State,* 983 S.W.2d 249, 260 (Tex. Crim.App.1998), cited by the majority, this Court also noted the decision in *United States v. Ortiz–Arrigoitia,* 996 F.2d 436, 441 (1st Cir.1993), a case involving allegations of striking at the defendant over the shoulder of counsel. "The appellate court was 'not persuaded that these comments were so prejudicial as to require reversal.' *Id.* at 441. But, the court added, 'We do not understand ... why, after numerous warnings from this court, the prosecuting attorneys ... persist in spiking their arguments with comments that put their cases at risk.' " *Id.* (Ellipses in original.) The same might be said of the case before us. The transgressions, while numerous, and the instructions to disregard, while tepid, may not merit reversal, but it is difficult to understand why, after five sustained objections for arguing outside of the record and several admonishments by the trial court, the prosecutor persisted in such behavior.

Further, with respect to arguments made about prior offenses, I find it disingenuous of the prosecutor in Jefferson County to complain to the jury that appellant had received successively lower sentences for each subsequent offense. The complained-of prior sentences were all from Jefferson County. According to the prosecutor, at least one of those increas-ingly lower subsequent sentences (1981) was the result of a plea bargain with Jefferson County. If appellant received increasingly lower sentences, it was because judges, juries, and/or prosecutors in Jefferson County determined that the increasingly smaller penalties were appropriate to the charges brought by Jefferson County. It is a duplicitous act unworthy of the state to create a situation and then to deplore its existence.