Opinion issued March 20, 2008









 






In The

Court of Appeals

For The

First District of Texas






NO. 01-06-01191-CR






MAURICE J. LONG-EDWARDS, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 178th District Court

Harris County, Texas

Trial Court Cause No. 1047750






MEMORANDUM OPINION


 A jury found appellant, Maurice J. Long-Edwards, guilty of murder and
assessed his punishment at confinement for life. In two points of error, appellant
argues that the trial court erred (1) in refusing to instruct the jury on voluntary
conduct and (2) in denying his motion for mistrial based on improper jury argument
by the State.

 We affirm.

Background

 On November 19, 2005, appellant bought a cigar from a Valero convenience
store. The store clerk, Hassan Elgharib, testified that appellant paid with coins that
he took from his pocket. Approximately 45 minutes later, appellant returned to the
store and told Elgharib that he had left his wallet. When Elgharib told appellant that
he had not seen a wallet, appellant became angry and asked to use the store's phone
to call 911. Elgharib allowed appellant to use the phone, but he noted that appellant
did not call 911 because he dialed more than three numbers, then went outside to
finish his call. Eventually, appellant returned to the store, threw the phone down on
the counter, and left.

 After appellant left the store for the second time, Johnny Ray Davis, the
complainant, arrived at the store to help Elgharib arrange the beer cooler. Davis
regularly worked at the store as a helper for the clerks. Approximately 20 minutes
later, appellant returned to the store for a third time. Appellant, who was carrying a
shotgun, walked up to Davis and demanded that Davis return appellant's wallet. 
Testimony regarding the exact statements varied slightly, but all accounts report that
Davis denied having the wallet and that appellant threatened to kill Davis. Appellant
then shot and killed Davis with the shotgun. The police did not recover appellant's
wallet, and they did not find any wallet on Davis's body.

 Elgharib was standing behind the counter during the exchange between
appellant and Davis. He testified that at first he was too shocked to move, but when
he saw that appellant had shot Davis, he decided that he had to "do what [he had] to
do." He testified that the store had a .45 caliber handgun for the clerk to use if he
ever saw a weapon or felt threatened. He got the handgun from under the counter, but
it took "a little while" because it had to be loaded. He testified that he then shot over
the counter in appellant's direction.

 After hearing Elgharib's testimony, appellant's trial counsel responded, "All
right. In fact, you shot the gun before [appellant] fired his shotgun, didn't you?" 
Elgharib answered, "No. After." Appellant established that Elgharib did shoot
appellant in the arm and in the abdomen. While questioning Elgharib regarding his
motivation for shooting appellant, appellant's trial counsel asked whether appellant
had fired a shot at Elgharib where he stood behind the counter. Elgharib answered,
"No. There was a person dead in front of me." Appellant's counsel replied, "I
understand that. In fact, [appellant] was simply standing there asking all of you in the
store to stay where you were until the police got there, right?" Elgharib answered,
"Wrong." Elgharib's testimony was substantially corroborated by the testimony of
another eyewitness, William Bibbs, a customer.

 Delores Brown was a store patron who testified that she saw appellant enter the
store with a shotgun as she drove up to the store. She and Bibbs both testified that
appellant was holding the shotgun down by his side as he entered the store. Brown
testified that she heard a louder first shot, which she thought was the shotgun, then
she heard a second shot that sounded different. She also testified that she heard the
glass on the front door of the store crack, and she heard another gunshot as she was
driving away. On cross-examination, appellant's counsel elicited testimony from
Brown that obstructions prevented a clerk at the counter from seeing someone
approaching the store from outside. 

 Appellant also questioned Officer J. Wood, who investigated the crime scene,
regarding how the .45 caliber casings landed on the rug in front of the counter if
Elgharib was shooting from behind the counter. Officer Wood testified that it
depended on how Elgharib was holding the handgun, but that the casings could
bounce off of the counter itself or off of some other surface. Appellant's counsel
said, "The position of the spent .45 casing shown in [in the crime scene photographs]
is actually inconsistent with somebody crouching down below the counter and
holding the handgun up just this far on the counter." Officer Wood answered, "If that
was the purported position of the firearm, it's not impossible, but improbable that the
[casings] would have ended up where they are." On re-direct examination, Officer
Wood testified that if someone shot at an angle, as Elgharib testified that he did, then
that would affect the direction of the shell casings and would be consistent with
where they were found. After the State rested, appellant also rested without calling
any witnesses.

 During the charge conference that occurred just before both sides rested,
appellant argued that he was entitled to an instruction on voluntary conduct. The
State argued that there was no evidence on the record that appellant's actions were
involuntary. Appellant responded:

I think there's ample evidence in the record from the witnesses[,] from
the physical evidence. Particularly[,] I'm talking about the two bullet
holes in [appellant]. There are hospital records . . . of [appellant] that
have been admitted into evidence showing that he was transported and
treated for two bullet holes received or administered by a gunshot. 
Those gunshots came from the pistol that was fired by [Elgharib].
[Elgharib] testified that he shot twice inside the store. . . .


 The inference being that he armed--[Elgharib] arm[ed] himself[,]
was ready when [appellant] came in the store. And when the gun or the
shotgun [appellant] was carrying was raised, then shots were fired. 
Now, the jury would be free to believe that the first shot came from
[Elgharib's] gun. If it did, and the jury so believed, then the reaction
from [appellant] holding the shotgun may well have been an involuntary
reaction, that is, he may have involuntarily pulled the trigger as he was
pointing the shotgun at [the complainant], thereby caused it to discharge
and kill [the complainant].


 So there's some evidence in the record, regardless of whether the
Court believes that evidence, that it could be an involuntary act on the
part of [appellant].


The trial court overruled appellant's objection, refusing to include appellant's
proposed instruction on voluntary conduct.

 During closing arguments, appellant's counsel made arguments regarding the
voluntariness of appellant's act even though the jury did not receive an instruction on
voluntary conduct. Appellant's counsel argued:

 The State has the burden of proof beyond a reasonable doubt . . .
to prove a voluntary act. And [the State] says that pointing a shotgun
and pulling the trigger, you know what you're doing at that point. I
would submit to you, that's correct, that's right, you know what you're
doing if you point the gun and voluntarily pull the trigger. But if you
don't voluntarily pull the trigger, if you don't intend at that moment to
cause the result, that is, the death of [the complainant], you're not guilty
of an offense.


 I want to talk to you about what the evidence suggests with regard
to intent and with regard to voluntary conduct. We talked about
voluntary conduct during voir dire. We talked about the fact that if there
was some other intervening factor that caused the pulling of the
trigger--now you know the case is about pulling the trigger--that
caused [appellant] to pull that trigger, then it was not a voluntary act. 
And so, you would have to believe beyond a reasonable doubt that there
was not other intervening factor or circumstance that caused the pulling
of that trigger.


Appellant's counsel then argued that appellant was shot in the arm by Elgharib as he
was raising the shotgun, before appellant fired a shot. Appellant's counsel argued
that Elgharib's shot went through appellant's arm and into his stomach and caused
appellant to pull the trigger. Appellant's counsel argued that it was an involuntary
act that caused the death of the complainant.

 During its closing argument, the State urged the jury, "When you go back into
that jury room, please don't leave your common sense in here, like the defense
counsel is hoping you will do. He did a good job of trying to confuse the facts of this
case." Appellant's defense counsel objected and stated, "It's just simply striking out
at the defendant through counsel, in counsel's performance. That's just--it's an
inaccurate statement of the law." The trial court sustained appellant's objection to
this argument as improper and instructed the jury to disregard the State's remark. 
Appellant also asked for a mistrial, which the trial court denied.

Analysis

 In two points of error, appellant argues that the trial court erred in refusing to
instruct the jury on voluntary conduct and in denying his motion for new trial based
on improper jury argument by the State.

Instruction on Voluntariness

 We review jury charge error in a two-step process. Ngo v. State, 175 S.W.3d
738, 744 (Tex. Crim. App. 2005). First, we determine whether error exists in the
charge. Id. If there is error, we then review the record to determine whether
sufficient harm was caused by the error to require reversal of conviction. Id. When
the charging error is preserved, reversal is required unless the error was harmless. 
Abdnor v. State, 871 S.W.2d 726, 732 (Tex. Crim. App. 1994). When the accused has
properly objected to the error in the jury charge, reversal is required when an
appellate court finds some harm to his rights. Ngo, 175 S.W.3d at 743.

 Texas Penal Code section 6.01(a) provides, "A person commits an offense only
if he voluntarily engages in conduct, including an act, an omission, or possession." 
Tex. Pen. Code Ann. § 6.01(a) (Vernon 2005). "Voluntariness" refers to one's own
physical body movements. (1) Rogers v. State, 105 S.W.3d 630, 638 (Tex. Crim. App.
2003). "If those physical movements are the nonvolitional result of someone else's
act, are set in motion by some independent non-human force, are caused by a physical
reflex or convulsion, or are the product of unconsciousness, hypnosis or other
nonvolitional impetus, that movement is not voluntary." Id.

 A criminal defendant is entitled to an instruction on every defensive issue that
is raised by the evidence. Pierini v. State, 804 S.W.2d 258, 260 (Tex.
App.--Houston [1st Dist.] 1991, pet. ref'd) (citing Hayes v. State, 728 S.W.2d 804,
807 (Tex. Crim. App. 1987)); see also Rogers, 105 S.W.3d at 637 (treating
voluntariness of conduct as defensive issue and stating, "Under the current penal code
. . . there is no 'defense of accident.' Now the no-voluntary-conduct aspect of that
former defense is addressed by Penal Code Section 6.01(a). . . .").

 Here, we have found no evidence that raised the issue of the voluntariness of
appellant's action in shooting the complainant. Appellant points to evidence
establishing the fact that he was shot in the arm. He also points to the testimony of
Brown and Bibbs suggesting that the shotgun was down by his side when he walked
into the store and Elgharib's testimony that the store kept a handgun under the
counter for the clerk to use if he ever saw a weapon or felt threatened. Appellant
argues that this evidence taken together could allow the jury to believe that Elgharib
actually fired the first shot, causing appellant to pull the trigger involuntarily. 
However, appellant presented no evidence that Elgharib fired the first shot--all of the
witnesses at trial testified that the first shot came from the shotgun fired by appellant
and was followed several seconds later by two shots from a handgun fired by
Elgharib.

 The medical evidence did establish that appellant was shot in the arm, but no
testimony or forensic evidence suggested that the wound sustained by appellant could
have caused any kind of involuntary movement that would have caused appellant to
pull the trigger of the shotgun. Thus, no reasonable inference about the voluntariness
of the physical movement could be drawn from the mere existence of injury to
appellant's arm. Therefore, no jury instruction on voluntary conduct was required. 
See Pierini, 804 S.W.2d at 260.

 We overrule appellant's first point of error.

Motion for Mistrial

 In his second point of error, appellant argues that the trial court erred in
denying his motion for mistrial. During jury argument, the State commented, "When
you go back into that jury room, please don't leave your common sense in here, like
the defense counsel is hoping you will do. He did a good job of trying to confuse the
facts of this case." Appellant objected, and the trial court sustained the objection and
instructed the jury to disregard the prosecutor's comments. Appellant also requested
a mistrial, which the trial court denied. Appellant argues that the State's comments
were an attempt to strike at appellant through his counsel. (2)

 We review a trial court's denial of a motion for mistrial for an abuse of
discretion. Hawkins v. State, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). A mistrial
is proper when the improper conduct is so harmful that the case must be redone. Id. 
Only in extreme circumstances, where the prejudice is incurable, will a mistrial be
required. Id. The Court of Criminal Appeals has held that we must balance three
factors when analyzing a trial court's denial of a motion for mistrial: (1) the severity
of the misconduct, (2) the curative measures, and (3) the certainty of conviction
absent the misconduct. Id. at 75, 77 (referring to factors in Mosely v. State, 983
S.W.2d 249, 259 (Tex. Crim. App. 1998), cert. denied, 526 U.S. 1070, 119 S. Ct.
1466 (1999)).

 Severity of Misconduct

 The Court of Criminal Appeals has equated the "severity of the misconduct"
with the prejudicial effect of the prosecutor's remarks. Id. at 77 (quoting Mosely, 983
S.W.2d at 259). The Court of Criminal Appeals has cautioned that "a prosecutor runs
a risk of improperly striking at a defendant over the shoulder of counsel when the
argument is made in terms of defense counsel personally and when the argument
explicitly impugns defense counsel's character." Cole v. State, 194 S.W.3d 538, 544
(Tex. App.--Houston [1st Dist.] 2006, pet. ref'd) (quoting Mosely, 983 S.W.2d at
259). Here, the State commented that appellant's counsel "did a good job of trying
to confuse the facts of this case." While this comment does seem to imply that
appellant's counsel might have been trying to mislead or trick the jury, we conclude
that the comments in this case were only mildly inappropriate. (3) The comments did
not directly accuse appellant's counsel of lying, nor did they suggest that any
evidence was manufactured. See Mosely, 983 S.W.2d at 260.

 Curative Measures

 In general, an instruction to disregard will cure the error of improper jury
argument by the State, unless the State's remark was so inflammatory that its
prejudicial effect could not reasonably be overcome by such an instruction. 
Wilkerson v. State, 881 S.W.2d 321, 327 (Tex. Crim. App. 1994) (citing Kinnamon
v. State, 791 S.W.2d 84, 89 (Tex. Crim. App. 1990)). In order for improper argument
to absolutely mandate reversal it must be extreme or inject new and harmful facts into
the record. Id. As we have already stated, the State's comments here were only
mildly inappropriate. Therefore, the trial court's instruction to disregard the State's
comments was sufficient to cure the error. See id.

 Certainty of Conviction

 Here, the State had a compelling case against appellant absent the improper
comments. Two eyewitnesses testified that appellant entered the convenience store
holding a shotgun, demanded that the complainant return appellant's wallet, then shot
the complainant. Those two eyewitnesses also testified that Elgharib did not shoot
at appellant until after appellant killed the complainant. Another witness, who had
pulled up outside the store, testified that she saw appellant enter the store carrying a
shotgun, then she heard one loud gunshot followed several seconds later by a
different gunshot. She testified that she heard a third gunshot that was similar to the
second as she drove away from the store. There is no indication that the jury
disbelieved appellant's theory because of the prosecutor's statement that appellant's
counsel was attempting to confuse them.

 In balancing these three factors, we conclude that the misconduct was not so
prejudicial that the instruction to disregard was insufficient to cure it and that the
State presented abundant evidence for the jury to rely on in convicting appellant
absent the improper comments. See Hawkins, 135 S.W.3d at 77.

 We overrule appellant's second point of error.

Conclusion

 We affirm the judgment of the trial court.





 Evelyn V. Keyes

 Justice


Panel consists of Justices Taft, Keyes, and Alcala.

Do not publish. Tex. R. App. P. 47.2(b).
1. The word "accident" has a more general meaning, and the Court of Criminal Appeals
has discouraged the use of the word "accident" to refer to an involuntary act under
section 6.01(a) of the Texas Penal Code. Rogers v. State, 105 S.W.3d 630, 638-39
(Tex. Crim. App. 2003); see also Williams v. State, 630 S.W.2d 640, 644 (Tex. Crim.
App. 1982).
2. Appellant also appears to argue that the State's comments were a mistatement of the
law concerning voluntariness of his conduct because that is what appellant's counsel
discussed during his jury argument. However, the State's argument does not contain
any reference to any particular rule of law, so we analyze it based solely on
appellant's complaint that the State's argument was an improper attack on appellant
through his counsel.
3. The State argued that its remarks at trial were a response to appellant's jury arguments
about voluntary conduct and were, therefore, proper. See Cole v. State, 194 S.W.3d
538, 544 (Tex. App.--Houston [1st Dist.] 2006, pet ref'd) (holding that answer to
opposing counsel's argument is proper topic for jury argument). However, this Court
has held, "Even if a prosecutor's statements are intended as a rebuttal, the legitimate
arguments of defense counsel cannot serve as a basis for permitting prosecutorial
comments that "cast aspersion on defense counsel's veracity with the jury." Id.
(quoting Mosely v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998)).