**Opinion filed January 29, 2010**



**In The**

# Eleventh Court of Appeals

---

**No. 11-08-00182-CR**

---

**CLARK JOSEPH WARD, Appellant**

**V.**

**STATE OF TEXAS, Appellee**

---

**On Appeal from the 350th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 8131D**

---

## M E M O R A N D U M   O P I N I O N

The jury convicted Clark Joseph Ward of three counts of aggravated sexual assault of a child, and the trial court assessed his punishment at seventy-five years confinement in each count to run concurrently. We affirm.

### I. *Background and Issues*

Ward was charged with three counts of aggravated sexual assault of his daughter, a child younger than fourteen years of age. Ward does not contest the sufficiency of the evidence but challenges his conviction with four other issues, contending that the trial court erred by admitting

evidence that he was arrested on a warrant from Kansas, erred by refusing to admit evidence of prior false accusations by the outcry witness, erred by disallowing the impeachment of a witness with a prior inconsistent statement, and erred by not granting a mistrial in response to the State's improper jury argument.

## II. *Discussion*

### A. *Ward's Arrest on a Kansas Warrant*.

Ward contends that the trial court erred by allowing into evidence the fact that he was arrested on a Kansas warrant, contending that this violated TEX. R. EVID. 404(b).[1] We review the trial court's admission of evidence under an abuse of discretion standard. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). A trial court does not abuse its discretion if its ruling is within the zone of reasonable disagreement. *Id.* We will uphold a trial court's evidentiary ruling if it is reasonably supported by the record and is correct under any theory of applicable law. *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005). If evidence is admitted or excluded in error, we must then conduct a harmless error analysis. TEX. R. APP. P. 44.2.

Outside the jury's presence, the State informed the trial court that it wanted to call Detective Terrill Lynn Perkins Jr. – the officer responsible for investigating the present charges – to testify that he learned Ward was in Kansas on an unrelated charge, that he asked for a courtesy interview by a Kansas detective in connection with this case, that Ward was released on probation and was told to remain in Kansas, but that Ward fled. Ward objected, contending that this testimony was irrelevant. The State responded that it was evidence of flight. The trial court ruled that the State could mention the Kansas warrant – but not the reason for the warrant and that the jury would be told that this warrant was completely unrelated to the present case. The trial court also ruled that the State could introduce evidence of the courtesy interview, that Ward was notified of the Texas charges, and that he failed to respond to those charges.

---

[1]This rule provides:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction.

2

The State then called Detective Perkins. Detective Perkins testified that Ward was identified as a suspect in this case, that he learned Ward was in Kansas, and that he set up a courtesy interview with a Kansas law enforcement officer. The interview was scheduled for September 8, and Ward was told to remain in Kansas. A few days later, however, Ward left Kansas, and a Kansas arrest warrant was issued. Ward was eventually arrested on this warrant.

The jury was not told what offense was alleged in the Kansas warrant, but the record establishes that it was for a theft charge. Ward argues that the Kansas warrant has no relevance to this case and contends that, if the State wanted to introduce evidence of flight, it could have done so without referring to the warrant by informing the jury that he left Kansas after being told of the Texas charges and that he was found and arrested by Abilene police officers two months later. Ward contends that the Kansas warrant was only evidence of an extraneous offense and, therefore, was inadmissible.

Ward's argument is based upon the principle that flight evidence is admissible if relevant to the offense under prosecution. *See Bigby v. State*, 892 S.W.2d 864, 883 (Tex. Crim. App. 1994). Consequently, Ward concedes that the State could introduce evidence that he left Kansas. But because the Kansas warrant was for an unrelated theft charge, Ward contends that its existence and his arrest on that warrant are not. The trial court did not abuse its discretion by finding otherwise. The jury was not told what charges Ward faced in Kansas but only that Kansas authorities issued a warrant after he disobeyed their instructions to remain. The trial court could reasonably conclude that the mere reference to a Kansas warrant did not inject evidence of other bad acts but was contextual evidence. It was offered during a chronological description of the Kansas law enforcement officials' actions and was also mentioned as the basis for Ward's subsequent arrest.

If we are incorrect, any error was harmless. Detective Perkins only briefly mentioned the Kansas warrant. The bulk of his testimony concerned his own investigation, and the clear implication of his testimony is that the Kansas warrant was issued because Ward fled after learning of the potential Texas charges. The brief reference to a Kansas warrant did not put Ward in the position of having to defend himself from accusations of being a bad person generally or to defend himself against collateral charges. Instead, the focus remained on the aggravated sexual assault charges for which he was tried. Issue One is overruled.

*B. Impeachment of the State's Outcry Witness.*

Ward next complains that the trial court erred by not allowing him to introduce evidence that the State's outcry witness had previously made false accusations against other family members. The State informed the jury during its opening statement that the minor victim told her Aunt Emily Guerrero that Ward had assaulted her and that Aunt Emily reported this to CPS. The State did not call Aunt Emily as a witness, but Ward sought to introduce evidence that Aunt Emily had previously falsely accused his stepfather of inappropriate sexual activity and had falsely accused his brother of physical assault. Ward contended that the State opened the door with its opening statement. The trial court excluded Ward's evidence because Aunt Emily had not yet testified. Subsequently, the trial court also excluded evidence of her reputation for truthfulness for this same reason.

Ward acknowledges that impeachment evidence is inadmissible until a witness testifies to some fact but contends that the excluded evidence was not impeachment evidence but was offered to rebut the State's theory that the victim talked to Aunt Emily and that Aunt Emily then talked to the authorities. The trial court did not abuse its discretion by disallowing Ward's proffer. The court could reasonably conclude that, because Aunt Emily was not a witness, her credibility was not in issue, and, therefore, evidence of prior false accusations was not relevant. The trial court could also reasonably conclude that, even if relevant, allowing evidence of accusations against other family members could cause confusion. Issue Two is overruled.

*C. Impeachment with a Prior Inconsistent Statement.*

The State called Ward's son as a witness. Ward attempted to impeach him with a prior statement to CPS. The State objected and contended that the document Ward was using for this purpose was not the son's sworn statement but was a report written by a CPS worker. The trial court examined the CPS document and found that it was primarily the investigator's or interviewer's recitation and that there was one quote attributed to Ward's son but that it related to a bite mark. The trial court then ruled that Ward could not use it as a prior inconsistent statement. Ward made a bill of exception. Ward's son recalled talking to a child welfare person. He denied telling this individual that his dad was nice, fun, and playful; that his father never physically abused him; or that his father was his best friend. He did tell the worker that he had never been spanked and testified that he did so because his paternal grandmother told him not to say anything about his father.

4

Ward complains that he was denied the opportunity to confront his son with a prior inconsistent oral statement. Ward characterizes the trial court's ruling as holding that only a signed, written statement can be used for impeachment purposes. We disagree. The trial court specifically addressed the CPS records because that was what Ward tendered as an inconsistent statement. The trial court did not err by finding that this document did not constitute a statement by Ward's son. TEX. R. EVID. 613 allows impeachment with a prior inconsistent oral statement, but Ward presented no evidence that his son had made one. When Ward's son denied telling the CPS worker that his father was his best friend, etc., it was incumbent upon Ward to offer evidence that his son had, such as with testimony from the CPS worker. Because Ward did not produce evidence of a prior inconsistent statement, the trial court did not err. Issue Three is overruled.

*D. Ward's Motion for Mistrial*.

Ward's final argument is that the trial court erred when it denied his motion for mistrial due to improper jury argument. During closing argument, the State told the jury:

> [Ward's counsel] said this is the toughest case to defend because you are charged with a crime and you can get on – you can get on the church steps and yell to the heavens, I didn't do this, and who is going to believe you? But he didn't do that. He didn't get on any –

Ward objected, contending this was a reference to his not testifying, and he moved for a mistrial. The trial court excused the jury. The State argued that it was not referring to his failure to testify but was referring to the fact that Ward was found hiding in a closet. The trial court then denied Ward's motion and instructed the State to clarify its argument. When the jury returned, the State continued with its closing:

> When the Defendant was informed of the charges in Kansas and told of the heinous nature, at that point he had the opportunity to get on any step he wanted, any step, the step of the CPS office, the step of the police department, the step of Emily's step, and say, What the hell are you talking about? What the hell are you doing to my kids? He could have done that. And he didn't.

Ward contends that the State commented on his failure to testify, that his constitutional privilege against self-incrimination was violated, and that it deprived him of a fair trial because it contributed to his conviction.

5

We review the denial of a motion for mistrial under an abuse of discretion standard. *Hawkins v. State*, 135 S.W.3d 72, 76-77 (Tex. Crim. App. 2004). Under this standard, an appellate court must uphold the trial court's ruling as long as it is within the zone of reasonable disagreement. *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004). In making its determination as to whether to grant a mistrial, the trial court determines whether the improper conduct is so harmful that the case must be redone. *Hawkins*, 135 S.W.3d at 76-77. Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required. *Id.*

The trial court did not abuse its discretion by denying Ward's motion for mistrial. The State's argument did appear headed to a comment on Ward's decision to not testify, and Ward appropriately objected. However, because that objection came in the middle of a sentence, the State's explanation for what it would have said requires a credibility analysis that the trial court is better equipped to resolve. We cannot second-guess the trial court's apparent decision to believe that explanation. The State's continuation was an appropriate argument, and the trial court could have reasonably determined that it was sufficient to clarify the State's position and remove any suggestion that the jury should hold Ward's decision to not testify against him. Issue Four is overruled.

### III. *Holding*

The judgment of the trial court is affirmed.


RICK STRANGE

JUSTICE


January 29, 2010

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.