SHARIF V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-326-CR

SHAZAD SHARIF APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 362ND DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant Shazad Sharif pleaded guilty to the offense of intoxication assault, and a jury assessed his punishment at three and one-half years’ confinement.  In a single issue, Sharif complains that the trial court erred by denying his motion for mistrial.  We affirm.

II.  Factual and Procedural Background

On March 26, 2003 around 2:00 a.m., Rebecca Abdallah, William Treese, and Adrian Brady, all friends, traveled southbound on Interstate 35 through Denton County in Abdallah’s Volkswagon Passat.  Treese drove, Abdallah sat in the passenger seat, and Brady sat in the rear seat behind the driver.  The Passat, traveling between sixty-five to seventy miles per hour in the left lane, began to pass a Volkswagon Beetle when Treese observed in his rear-view mirror the headlights of a vehicle approaching behind them at a high rate of speed.  Within a few moments, the vehicle, an Infinity Q45 driven by Sharif, collided into the rear of the Passat, which exploded into flames, struck the median, and bounced back into the lane of traffic.  After the Passat came to rest, Treese and Brady escaped from the wreckage and removed Abdallah from the burning vehicle.  The collision caused the driver of the Beetle to lose control of his vehicle momentarily and to veer off the highway.  Sharif, lying on the ground outside of his Infinity, rolled off of the highway and onto the grass shoulder.

Paramedics and police arrived at the accident scene shortly thereafter.  A Denton Police Department officer testified that Sharif had bloodshot eyes and a strong odor of alcohol on his breath.  Sharif later stated that he had been drinking alcoholic beverages earlier that night, and a blood sample that he voluntarily provided to police a few hours after the accident indicated a blood-alcohol concentration of 0.19 grams of alcohol per 100 milliliters, twice the legal limit.  Officers arrested Sharif after he was treated for an injury to his hand.

Investigators determined that Sharif’s vehicle was traveling between 90 and 105 miles per hour at the time it collided with Abdallah’s Passat.  Treese and Brady suffered minor injuries as a result of the accident, but Abdallah suffered third degree burns to a third of her body, necessitating multiple skin graft surgeries and physical rehabilitation. 

Sharif pleaded guilty and elected to have a jury assess his punishment. Before voir dire began, the trial court granted Sharif a motion in limine excluding evidence regarding a subsequent traffic accident believed to have been caused by onlookers to this accident.  Two people apparently died in the second accident.  During the State’s case-in-chief, the jury viewed State’s Exhibit 2, a videotape of interviews conducted by one of the police officers after the initial accident.  In the tape, a witness stated, “I hope there’s not two people dead there.”  Defense counsel objected immediately, the trial court stopped the tape, and the jury was removed from the courtroom.  The trial court subsequently sustained Sharif’s objection but denied his request for a mistrial.  The trial court further instructed the jury that they were to disregard the final two minutes of the videotape.  During deliberations, the trial court received a number of questions from the jury requesting information about probation. 

III.  Request for Mistrial

Sharif argues that the trial court erred by denying his request for a mistrial because the statement heard by the jury in State’s Exhibit 2 likely influenced its decision to forego probation and assess punishment at three and one-half years’ confinement.  Sharif also argues that the State referenced the “killings” (deaths occurring during subsequent accident) during closing arguments, thus emphasizing the excluded evidence.

When the trial court sustains an objection and instructs the jury to disregard but denies a defendant’s motion for mistrial, the issue is whether the trial court abused its discretion by denying the mistrial.  
Hawkins v. State
, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); 
Primes v. State
, 154 S.W.3d 813, 814 (Tex. App.—Fort Worth 2004, no pet.).  Only in extreme circumstances, in which the prejudice is incurable, will a mistrial be required.  
Hawkins
, 135 S.W.3d at 77.  Such a circumstance exists when the conduct is “so prejudicial that expenditure of further time and expense would be wasteful and futile.”  
Id
.; 
see also Simpson v. State
, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003), 
cert. denied
, 124 S. Ct. 2837 (2004).  Generally, an instruction to disregard cures any prejudicial effect.  
Wesbrook v. State
, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000), 
cert. denied
, 532 U.S. 944 (2001).  Only when it is apparent that an objectionable event at trial is so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant is a trial court required to grant a mistrial.  
Bauder v. State
, 921 S.W.2d 696, 698 (Tex. Crim. App. 1996).

Here, the trial court stopped the videotape immediately after the complained-of statement was made, and it was not repeated or referenced after proceedings continued.  The record indicates that the State did not intentionally violate the motion in limine, thus deliberately exposing the jury to the prohibited portion of the videotape.
(footnote: 2)  The record further demonstrates that the State did not in any manner refer to the deaths in its closing argument “by way of innuendo,” as Sharif argues.  The trial court instructed the jury to disregard the final two minutes of the videotape, and there is nothing in the record to indicate that the jury failed to follow the instruction.  Consequently, we must presume that the instruction was effective.  
See id. 
 Finally, Sharif’s argument that the videotape evidence affected the jury’s decision to assess punishment as confinement instead of probation is likewise not supported by the record; it is not unusual for a jury to send questions to the trial court during deliberations inquiring into the specifics of probation.  Thus, our review of the particular facts and circumstances of this case lead us to conclude that the statement was not so prejudicial that expenditure of further time was wasteful and futile.  
See
 
Hawkins
, 135 S.W.3d at 77.  Accordingly, we hold that the trial court did not abuse its discretion by denying Sharif’s request for a mistrial.  We overrule Sharif’s sole issue.

IV.  Conclusion

Having overruled Sharif’s sole issue, we affirm the trial court’s judgment.  

PER CURIAM

PANEL F: MCCOY, LIVINGSTON, 
and
 DAUPHINOT, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:
 November 3, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P. 47.4
.

2:
Outside the presence of the jury, the trial court stated, “I know you didn’t do that intentionally, Mr. Schultz.  There’s no doubt in my mind you didn’t do it intentionally.”