In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-08-103 CR


____________________



TERRY MILLICAN, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 1A District Court


Tyler County, Texas


Trial Cause No. 10,526






 MEMORANDUM OPINION


 A jury found Terry Millican, an inmate, guilty of four counts of harassment, a third
degree felony. See Tex. Pen. Code Ann. § 22.11 (Vernon Supp. 2008). The jury further
found the enhancement allegation to be true and set his punishment on each count at twenty
years in prison and a $10,000.00 fine. The trial court sentenced Millican in accordance with
the jury's verdict. On appeal Millican raises two issues. He contends that he was denied his
right to confront certain witnesses and that the trial court erred when it refused to instruct the
jury to disregard comments made by the prosecutor. We affirm.

 In 2003, Millican was convicted of aggravated robbery and was sentenced to sixty
years' confinement in the Texas Department of Criminal Justice, Institutional Division
("TDCJ"). In October 2005 while serving this sentence, Millican threw a carton containing
fecal material at four correctional officers, thus leading to the harassment charges for which
the State indicted him. (1)

 On the day of the offenses, Millican rigged his food-tray slot to make it stay open. 
The slot was located in the cell door, and other than the door, was the only opening to the
corridor. Sergeant Vergil Hussey, a correctional officer working on Millican's wing, talked
with Millican in an unsuccessful attempt to get him to close the slot. Sergeant Hussey then
reported the situation to his superior officer, who authorized the assembly of a team to regain
control of the slot. As the four-member team approached Millican's cell door, he threw a
milk carton at them which bounced off the shield carried by the first officer. The carton's
contents spattered on the team members. A subsequent analysis of the clothing worn by a
team member established that the carton contained fecal material.

Right to Confront Witnesses


 Issue one asserts that the trial court erred by allowing portions of the incident
videotape to be played because Sergeant Hussey described "what other prison employees
were doing/saying and said employees should have been called to testify about their own
actions/words which violated the confrontation rules." Millican contends that Sergeant
Hussey "testified about the words and actions" of Captain Moore and Major Gaston, two
prison employees. Millican maintains that they should have testified so that his attorney
could have cross-examined them.

 Millican's complaints on appeal, however, are not consistent with his trial objections. 
During the trial, Millican complained that different parts of the testimony and different parts
of the videotape violated his confrontation rights. Millican's counsel lodged an objection
during trial to statements made by Sergeant Hussey at the beginning of the videotape. In
those statements, Hussey explained the reasons for assembling the team but did not address
the "words and actions" of Captain Moore or Major Gaston.

 On appeal, Millican's complaints concern Hussey's trial testimony that Captain Moore
was issuing instructions to get the obstruction tool to open Millican's cell door and that
Major Gaston was "conversing with [Millican] about coming out, unblocking the door." 
Moore's instructions on the videotape occur substantially after Hussey's beginning
statements, and Gaston's conversation with Millican occurs almost at the end of the tape. (2) 

 To preserve a complaint for appellate review, a party must have presented to the trial
court a timely request, objection, or motion stating the specific grounds for the ruling desired. 
Tex. R. App. P. 33.1(a). A defendant's issue on appeal must comport with the specific
objection made at trial. Wilson v. State, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). 
Because Millican's issue before us addresses testimony that differs from that addressed by
the objections he made at trial, we find he failed to preserve his confrontation complaint for
review. We overrule issue one. 

Request for Jury Instruction to Disregard


 Issue two contends that the trial court erred during the punishment phase when it
refused Millican's request for a jury instruction to disregard the prosecutor's statement
questioning why the defendant did not offer certain reports into evidence. Millican requested
the instruction after the trial court sustained his objection to the prosecutor's statement.
Millican argues that the prosecutor improperly commented on his attorney's actions.

 During closing argument, the prosecutor referred to reports prepared by Dr. Floyd
Jennings, one of Millican's witnesses. The prosecutor stated: "And you'll notice that these
three documents right here, these last three, they came from [Millican's] witness. Strangely
enough, I had to offer them into evidence. They didn't. Now, you got to wonder why that
is." Millican's attorney immediately objected, and the trial court sustained the objection.
When Millican's attorney then requested a jury instruction to disregard, the trial court said: 
"Let's just move on with your closing argument."

 Citing Bell v. State, Millican argues that the prosecutor's statements were improperly
intended to indicate defense counsel acted in bad faith by not offering the documents as
evidence. See 614 S.W.2d 122, 123 ( Tex. Crim. App. 1981) (Prosecutor "was striking at the
appellant over the shoulders of his counsel in an attempt to prejudice the jury against the
appellant."). The State argues that the prosecutor's comment was only mildly inappropriate
and did not affect any of Millican's substantial rights. We agree.

 In the punishment phase, Millican called Dr. Jennings, a court-appointed psychologist
who had evaluated Millican to assess his competency to stand trial. Dr. Jennings testified
that he reviewed Millican's records, including his disciplinary history within the TDCJ, and
interviewed him for approximately an hour. Based on the records and interview, Dr.
Jennings concluded that Millican was competent to stand trial because he had a rational and
factual understanding of the proceedings against him and had a present ability to assist his
lawyer with a reasonable degree of rational understanding. Dr. Jennings also concluded that
Millican was legally sane when he harassed the officers. Dr. Jennings explained that
Millican "was aware that he had received disciplinary action for at that time 68 cases of one
sort or another. He knew very well that he would conceivably be punished for his then acts."
Dr. Jennings also testified that Millican had been hospitalized several times in TDCJ
hospitals for psychiatric reasons and had been diagnosed as having a chronic, mild-to-moderate schizoaffective disorder. Dr. Jennings stated that Millican, who was twenty-four
at the time of trial, presented the "difficult situation of a bright, antisocial, acting-out kid who
also was mentally ill." Dr. Jennings opined that Millican was receiving insufficient doses
of the antidepressant and antipsychotic medications he was taking and that "he would be
managed far the better if he had been medicated more aggressively." When asked how
stronger doses could help Millican, Dr. Jennings stated: 

 Nobody has a crystal ball and can predict with absolute certainty, but there is
data to indicate that the frequency of disruptive outbursts would be reduced
and the intensity would be reduced. So, if he had had 68 cases of one kind or
another in the three years he had been in the system and he were treated
aggressively, we could reduce that 20-some-odd a year significantly.


 During the State's cross-examination, Dr. Jennings testified he stood by the
conclusions he reached in the three reports he prepared for the trial court. Dr. Jennings's
competency report concluded Millican was competent to stand trial. The sanity report
concluded Millican had a mental illness but it was not one "that would give rise to an insanity
claim." Moreover, the sanity report stated that Millican 

 expressed awareness that a host of behaviors are met with punishment, and are
'wrong' in the context in which he finds himself-such awareness would
include harassment. Moreover, the type of act with which charged requires
such planning and volition that relating it to some bizarre delusion or delusions
of sufficient moment that a defendant would be unaware of the wrongfulness
of such, strains the limits of credulity-as these particular acts are conducted
precisely because they are understood to be regarded as wrong and offensive. 
Ergo, despite his troubled psyche, he meets the criteria for sanity and is to be
considered SANE at the time of the alleged offense(s). 


Dr. Jennings also submitted another report addressing whether Millican presently had a
mental illness that required court-ordered mental health services. See Tex. Code Crim.
Proc. Ann. art. 46C.105 (Vernon 2006). While that report stated that Millican had a mental
illness and likely was a danger to himself or others, the report further explained that
Millican's dangerousness was not predicated on his mental illness but upon his antisocial
personality disorder, a condition that does not warrant court-ordered mental health treatment. 
 In closing, Millican's counsel invoked Dr. Jennings's testimony as a basis for
requesting a four-year sentence instead of the twenty-year sentence sought by the State. 
Millican's counsel argued: 

 I do hope that the testimony you heard from Dr. Jennings is helpful. I
think perhaps you're now given a little clearer picture of who Terry Millican
is. He's a very troubled individual. He's got mental health issues. He's got
behavioral issues. And Dr. Jennings made no attempt to try to conceal that
information from you . . . . 

 . . . .

 [Terry] also has some very serious emotional and mental health issues. 
Probably-and this is in part and parcel to what I'd consider mitigation. If TDC
had more aggressively treated him, your service may not have been required. 
We may not be going through this exercise, adjudicating the issues of guilt and
innocence and in punishment today, this week. And instead had they placed
him on a higher dosage of the medication or changed his medication to
something that could more aggressively address his emotional problems, then
these issues we would not have to be dealing with today.

 . . . .

 Let's chalk this up to a serious lapse in judgment that could have been
addressed with more aggressive treatment for Terry, and let's not throw him out
as a lost cause. Four years. Four years.


During rebuttal, immediately after defense counsel's argument requesting a four-year
sentence, the prosecutor made the comments that are the subject of Millican's complaint.

 Our analysis of issue two begins with noting that improper jury argument is generally
considered non-constitutional error. See Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim.
App. 1998); see also Tex. R. App. P. 44.2(b) (Non-constitutional errors not affecting
substantial rights are disregarded.). In determining whether a defendant's substantial rights
are affected, we balance three factors: 1) the misconduct's severity, 2) the measures adopted
to cure the misconduct, and 3) the certainty of punishment without the misconduct. See
Hawkins v. State, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).

 The most egregious forms of a prosecutor's improper jury argument may involve 1)
accusations of manufactured evidence, 2) contrasting the ethical obligations of prosecutors
with those of defense counsel, and 3) casting doubt on defense counsel's truthfulness. 
Mosley, 983 S.W.2d at 258-59. Noting the difficulty of articulating a precise rule regarding
improper argument, the Mosley Court concluded that 

 it is fair to say that a prosecutor runs a risk of improperly striking at a defendant
over the shoulder of counsel when the argument is made in terms of defense
counsel personally and when the argument explicitly impugns defense counsel's
character. In the present case, the argument referred to counsel personally and,
although not saying so explicitly, it suggested that counsel wanted to divert the
jury from the truth.


Id. at 259. 


 The Mosley Court found that the prosecutor's comments were "mildly inappropriate"
as they neither directly accused the defense attorneys of lying nor suggested that the defense
manufactured any evidence. Id. at 258, 260 (considering comments that defense counsel was
attempting to get the jury to stray from "the main road" leading to the truth and instead wanted
the jury to take "side roads, rabbit trails" leading to a dead end). The Court concluded that
the conduct's severity was relatively small and that factor, therefore, did not weigh very
heavily in the appellant's favor. Id. at 260. As to whether measures were adopted to cure the
misconduct, the Court further noted there was no attempt to correct the misconduct; instead,
the prosecutor reemphasized the statements after the trial court overruled the defendant's
objections. Id. With respect to the third factor, the certainty of punishment without the
misconduct, the Mosley Court found that factor to weigh heavily in the State's favor. The
Court concluded that the prosecutor's comments were harmless, given their mildness and the
strength of the State's case. Id.

 Similar to Mosley, the prosecutor here did not accuse Millican's attorney of lying or
manufacturing evidence. At most, the prosecutor's comments suggest the defense recognized
that the doctor's reports contained evidence that did not favor Millican. As in Mosley, the
prosecutor's comments in Millican's trial did not "inject new facts into the record, and the
jury [was] in a position to evaluate the truthfulness of the prosecutor's assertion." Id. Thus,
the first factor, severity of the misconduct, does not significantly weigh in Millican's favor. 

 As to the measures adopted to cure the prosecutor's misconduct, that factor is less
significant under the circumstances here than in Mosley. In Mosley, the trial court overruled
the defendant's objection; here, the trial court sustained Millican's objection and by doing so
likely indicated to the jury that the prosecutor's comments were improper. See id.

 The third factor, the strength of the State's case supporting punishment, weighs heavily
in the State's favor. The jury heard Dr Jennings's testimony that while incarcerated, Millican
had been involved in sixty-eight instances involving disciplinary actions over a three-year
period, was sane when he harassed the correctional officers, and knew he could be punished
for his actions. The trial court admitted Dr. Jennings's three reports into evidence. The sanity
report noted that twenty-two of Millican's disciplinary actions involved assaults on staff
members, and the report explained that Millican was aware his behavior was wrong and that
such acts were "conducted precisely because they are understood to be regarded as wrong and
offensive." Another of Dr. Jennings's reports attributed Millican's dangerousness to his
antisocial personality disorder. Thus, the jury had ample evidence before it to consider in
determining Millican's punishment. 

 Based on the factors used to decide whether the alleged errors affected Millican's
substantial rights, we conclude that Millican's substantial rights were not affected when the
trial court declined to instruct the jury to disregard the prosecutor's comments. See Tex. R.
App. P. 44.2(b). We overrule issue two and affirm the trial court's judgment. 

 AFFIRMED. 


 ____________________________

 HOLLIS HORTON

 Justice


Submitted on December 4, 2008

Opinion Delivered December 17, 2008

Do Not Publish


Before McKeithen, C.J., Kreger and Horton, JJ.
1. The Texas Penal Code prohibits harassment of a public servant as follows: 

 

 (a) A person commits an offense if, with the intent to assault, harass, or
alarm, the person:

 . . . . 

 (2) causes another person the actor knows to be a public servant to
contact the blood, seminal fluid, vaginal fluid, saliva, urine, or feces
of the actor, any other person, or an animal while the public servant
is lawfully discharging an official duty or in retaliation or on account
of an exercise of the public servant's official power or performance
of an official duty. 


Tex. Pen. Code Ann. § 22.11(a)(2) (Vernon Supp. 2008). 
2. With respect to Moore's instructions, Millican's brief complains about the following
specific testimony from Hussey: "Captain Moore instructed someone, I don't remember who
at this time, to obtain the obstruction tool, which is a bar, that we go in there and remove the
obstructions." Regarding Gaston, Millican also complains in his appeal about the trial
court's admission of Hussey's testimony, as follows:


 Q. Did you have any success [trying to get Millican to remove the obstructions]?

 A. No, sir. That was Major Ken Gaston.

 Q. So, he's the acting assistant warden at that point; is that correct?

 A. Yes, sir. 

 Q. What's he doing?

 A. He is conversing with Terry about coming out, unblocking the door.

 Q. And did he have any success?

 A. Yes, sir.

 (Videotape was played).

 Q. (By Mr. Hernandez) What's going on there?

 A. He's telling him that he's going to come out.