TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-07-00117-CR






Jonathan Williams, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT

NO. CR-05-280, HONORABLE WILLIAM HENRY, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 A jury convicted appellant Jonathan Williams of murder and sentenced him to fifty-five years' imprisonment. On appeal, he complains that the trial court should have granted his
motion for a mistrial following the State's reference to evidence earlier ruled to be inadmissible and
that his statements to a police officer should have been ruled inadmissible because he was clearly
in custody at the time he made the statements. We affirm the trial court's judgment of conviction.

 Appellant was charged with murdering Michell Webb, whom he had been dating for
a number of years. Webb was reported missing by her family on November 17, 2003, after her father
found her car in a Wal-Mart parking lot in Bexar County. A San Antonio police officer questioned
appellant about Webb's disappearance, and appellant said he did not know where she was. The
officer noticed a small abrasion under appellant's left eye, and appellant said his nephew had
scratched him while they were wrestling. Although appellant did not raise the officer's suspicions
related to Webb's disappearance, he was arrested due to unrelated outstanding warrants and brought
before a magistrate; he was still in police custody when he eventually led the police to Webb's body
on November 20, 2003. On November 19, 2003, the police found Webb's keys and credit card in
a closet at the car wash where appellant worked. That same day, while appellant was still in custody
for the unrelated warrants, Detective Tim Angell interviewed appellant, telling appellant he was
inquiring into Webb's disappearance and reading him his statutory rights. Appellant initially denied
knowing anything about Webb's whereabouts, but after Angell said that the police were
fingerprinting Webb's vehicle and had recovered a videotape from the Wal-Mart parking lot,
appellant said that on November 16, 2003, Webb, whom he had been dating for four years, told him
she "needed to get away." Appellant said that at Webb's request, he dropped her off at the airport
at about midnight, left her vehicle in the parking lot, rode his bike home, and then lied to Webb's
parents when they called looking for her. Angell typed appellant's statement as appellant spoke and
asked appellant to read and sign the statement, which includes a portion setting out appellant's rights. 
Appellant initialed next to each of his statutory rights and signed the statement.

 On November 20, 2003, Detective Barney Whitson interviewed appellant again about
Webb's disappearance. During the course of the day, appellant gave three different statements, each
of which was typed on a form that recited appellant's statutory rights, included a statement that
appellant understood and waived his rights, and was read and signed by appellant. Before appellant
gave his first statement, Whitson also read him his rights and had appellant initial a different form
from which Whitson read appellant's rights. Appellant's first statement was similar to the story he
told Angell, but when Whitson said he thought Webb had scratched appellant's face and suggested
that DNA evidence could incriminate appellant, appellant gave a second statement in which he said
members of the Mexican Mafia to whom he owed money had taken Webb.

 Whitson again told appellant that he did not believe his statement and informed him
that the police had found blood inside Webb's car and "that not only did [appellant] have a scratch
under his left eye, his right eye was also scratched and it looked like [Webb] was trying to gouge his
eyes out." Appellant then gave a third statement admitting to killing Webb. Appellant said Webb
was upset because he told her he "just wanted to be friends," so he and Webb drove around in her
car, smoked marihuana, and argued. According to appellant's statement, Webb lunged at him and
scratched his face, and he "held her against my chest to keep her from hitting me" and to calm her. 
Appellant held Webb until she stopped moving and then realized he had suffocated her. He
unsuccessfully tried to resuscitate her and then drove her body to another location, where he stayed
for about four hours, "drinking beer, smoking weed and holding Michell. I was apologizing to
Michell." He said, "I don't want to say where I put Michell but I'm willing to show you where she
is." Appellant eventually guided Whitson to Webb's body in a field in Hays County. 

 In his first issue, appellant argues that the trial court should have granted his motion
for mistrial after the State referred during closing arguments in the guilt/innocence phase to
toxicology tests performed on Webb's body. We disagree.

 Dr. Kimberley Molina, medical examiner for Bexar County, testified that Webb was
strangled, although on cross-examination, she admitted that there might have been a "combination"
of strangulation and smothering, as described by appellant. The State asked Molina about the results
of toxicology tests performed on Webb, but defense counsel objected that the answer would be
hearsay because Molina did not personally conduct the tests. The trial court sustained the objection,
and the State said, "My only concern is they've left a false impression with the jury because the
defendant is saying she took drugs with him and I'm sure that they're going to get up and argue that
she was doing this and that and saying bad things about her . . . ." Later in the State's questioning,
Molina testified that alcohol or another depressant might slow a victim's respiration such that "it
would take less effort" to smother or strangle her. The State asked whether drugs or alcohol were
found in Webb's system, appellant objected again, and the trial court sustained the objection. 

 In the State's initial closing statement, the prosecutor did not refer to whether Webb
had used marihuana. In his closing, appellant's counsel argued that it was more likely that the
Mexican Mafia had killed Webb or, alternatively, that appellant killed her accidentally. He said,
"The medical examiner also said that if you had a combination of say alcohol and barbiturates and
someone starts strangling you, it would take a lot less pressure to cause the injury." He then said,
"What if you're taking ecstasy and marijuana and whisky and Ice House or whatever else that these
young people were doing, whatever else they were doing--they had been together a long time, they
know each other." He went on to say that the Webb family was "blessed" because two of their three
children "went on and became productive citizens, but Michell was a little wild." Still later he said,
"He's a young black man, he's dating a white girl, they may be doing some kind of drugs together,
alcohol together." On rebuttal, the prosecutor attempted to counter defense counsel's arguments and
then said, "And there's been no evidence admitted to you that there was any drugs in Michell's
system. As a matter of fact, when I asked Kim Molina about the toxicology, who objected and kept
it out? [Defense counsel]. Don't you know that if there is anything that helped his case, he would
have let that in." Defense counsel objected, and the trial court sustained the objection. Counsel
asked for an instruction to disregard, which the trial court granted, and then asked for a mistrial,
which the court denied.

 We review a trial court's refusal to grant a mistrial for an abuse of discretion, and
mistrial is required "[o]nly in extreme circumstances, where the prejudice is incurable." Hawkins
v. State, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). "A mistrial is the trial court's remedy for
improper conduct that is 'so prejudicial that expenditure of further time and expense would be
wasteful and futile.'" Id. (quoting Ladd v. State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). In
our review, we consider three factors: "(1) severity of the misconduct (the magnitude of the
prejudicial effect of the prosecutor's remarks), (2) measures adopted to cure the misconduct (the
efficacy of any cautionary instruction by the judge), and (3) the certainty of conviction absent the
misconduct (the strength of the evidence supporting the conviction)." Mosley v. State, 983 S.W.2d
249, 259 (Tex. Crim. App. 1998).

 Initially, we note that the prosecutor's statement might be viewed as invited by
defense counsel's repeated statements that Webb had been drinking and using drugs, both in general
and on the night she was killed. See Nethery v. State, 692 S.W.2d 686, 703 (Tex. Crim. App. 1985)
(four proper areas of jury argument are summation of evidence, reasonable deductions from
evidence, answer to defense arguments, and plea for law enforcement); see also Long v. State,
823 S.W.2d 259, 269 (Tex. Crim. App. 1991) (prosecutor's statement that defendant could have
provided jury with mitigating evidence was invited by defense counsel's statement, "I don't know
what his mental state was in 1983 in Bay City, Texas. I wasn't there and we weren't there . . . ."). 
Even if we assume that the prosecutor's statement that there was no evidence related to toxicology
results was not invited, we hold that any error was cured by the trial court's instruction to the jury
to disregard. See Bower v. State, 769 S.W.2d 887, 907 (Tex. Crim. App. 1989) ("Ordinarily, any
injury from improper jury argument is obviated when the court instructs the jury to disregard, unless
the remark is so inflammatory that its prejudicial effect cannot reasonably be removed by such an
admonishment."). When we consider the brevity of the prosecutor's remark, the trial court's
sustaining of appellant's objection and instruction to disregard, and the overwhelming weight of the
evidence of appellant's guilt--such as appellant's untrue statements, his eventual confession, his
knowledge of the location of Webb's body, and the medical examiner's testimony that Webb was
strangled and probably not smothered--we hold that the trial court did not err in denying appellant's
motion for mistrial. See Mosley, 983 S.W.2d at 259. We overrule appellant's first issue.

 In his second issue, appellant argues that the trial court should not have allowed
testimony during the guilt/innocence phase by San Antonio Police Officer Daryl Volkmann about
a statement appellant made after Webb's body was discovered. Appellant argues that "[a]t the time
that the victim's body was found, the Appellant was under the impression that he was under arrest
for the traffic warrants" and that "[a]t no time was the Appellant told that he was under arrest for the
murder of [Michell] Webb." We disagree.

 After appellant gave his third statement, Whitson, appellant, and two other detectives
drove out to find Webb. After her body was located, Volkmann and his partner were asked to drive
appellant back to San Antonio. Volkmann testified that when they arrived back at the police station,
appellant asked without any prompting "how much time did I think he would receive for the murder
of [Webb]. He stated, 'After all, I confessed to killing her.'" Volkmann had not himself read
appellant his rights or informed him that he was under arrest for Webb's murder before appellant
made the statement.

 Although there was no testimony of when appellant was explicitly told that he was
under arrest for Webb's murder, he was told at least four times that he was being questioned with
regard to her disappearance; was read his rights at least twice; signed one form reciting his rights to
indicate that he understood his rights; signed one form that also recited his rights, initialing next to
each right; and read and signed his three written statements, all of which recited his rights and stated
that he understood and waived his rights. Before he gave his first statement to Whitson, Whitson
informed appellant that he was being questioned with regard to Webb's disappearance, and before
his second and third statements, he was also informed about the state of the evidence discovered thus
far. Appellant eventually gave a statement admitting to killing Webb and led the police to her body. 
Not until appellant had been driven back to the police station in San Antonio in handcuffs and leg
irons did he make the statement about which he complains. It is beyond rational belief that appellant
might have still been under the impression that he was only in custody for outstanding warrants or
might somehow not have realized that the focus of the officers' interest in him had shifted from
outstanding warrants to Webb's murder. Further, Volkmann testified that appellant volunteered the
question without any prompting or questioning, and therefore it was not the result of custodial
interrogation. See Tex. Code Crim. Proc. Ann. art. 38.22, § 5 (West 2005) (nothing precludes
admission of statement "that does not stem from custodial interrogation, or of a voluntary
statement"); Ruth v. State, 167 S.W.3d 560, 570-71 (Tex. App.--Houston [14th Dist.] 2005,
pet. ref'd) (volunteered statement made to police officer without prompting by police interrogation
was admissible). We overrule appellant's second issue.

 Having overruled both of appellant's issues, we affirm the trial court's judgment
of conviction.


 ___________________________________________

 David Puryear, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed: June 18, 2009

Do Not Publish