Opinion filed January 29, 2010











 
 
  
 
 







 
 
  
 
 




Opinion filed January 29,
2010

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                  ___________

 

                                                          No. 11-08-00182-CR 

                                 __________

 

                                  CLARK JOSEPH WARD, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                         On
Appeal from the 350th District Court

 

                                                          Taylor
County, Texas

 

                                                   Trial
Court Cause No. 8131D

 



 

                                             M
E M O R A N D U M   O P I N I O N

The
jury convicted Clark Joseph Ward of three counts of aggravated sexual assault
of a child, and the trial court assessed his punishment at seventy-five years
confinement in each count to run concurrently.  We affirm.

                                                          I. 
Background and Issues








Ward
was charged with three counts of aggravated sexual assault of his daughter, a
child younger than fourteen years of age.  Ward does not contest the
sufficiency of the evidence but challenges his conviction with four other
issues, contending that the trial court erred by admitting evidence that he was
arrested on a warrant from Kansas, erred by refusing to admit evidence of prior
false accusations by the outcry witness, erred by disallowing the impeachment
of a witness with a prior inconsistent statement, and erred by not granting a
mistrial in response to the State=s
improper jury argument.

                                                                   II.
Discussion

            A. 
Ward=s Arrest
on a Kansas Warrant. 

Ward
contends that the trial court erred by allowing into evidence the fact that he
was arrested on a Kansas warrant, contending that this violated Tex. R. Evid. 404(b).[1] 
We review the trial court=s
admission of evidence under an abuse of discretion standard.  Weatherred v.
State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).  A trial court does not
abuse its discretion if its ruling is within the zone of reasonable
disagreement. Id. We will uphold a trial court=s evidentiary ruling if it is reasonably
supported by the record and is correct under any theory of applicable law.  Martin v.
 State, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005).  If evidence is
admitted or excluded in error, we must then conduct a harmless error analysis. 
Tex. R. App. P. 44.2.

Outside
the jury=s presence,
the State informed the trial court that it wanted to call
Detective Terrill Lynn Perkins Jr. B
the officer responsible for investigating the present charges B to testify that he learned
Ward was in Kansas on an unrelated charge, that he asked for a courtesy
interview by a Kansas detective in connection with this case, that Ward was
released on probation and was told to remain in Kansas, but that Ward fled. 
Ward objected, contending that this testimony was irrelevant.  The State
responded that it was evidence of flight.  The trial court ruled that the State
could mention the Kansas warrant B
but not the reason for the warrant and that the jury would be told that this
warrant was completely unrelated to the present case.  The trial court also
ruled that the State could introduce evidence of the courtesy interview, that
Ward was notified of the Texas charges, and that he failed to respond to those
charges.








The
State then called Detective Perkins.  Detective Perkins testified that Ward was
identified as a suspect in this case, that he learned Ward was in Kansas, and
that he set up a courtesy interview with a Kansas law enforcement officer.  The
interview was scheduled for September 8, and Ward was told to remain in
Kansas.  A few days later, however, Ward left Kansas, and a Kansas arrest
warrant was issued.  Ward was eventually arrested on this warrant.

The
jury was not told what offense was alleged in the Kansas warrant, but the
record establishes that it was for a theft charge.  Ward argues that the Kansas
warrant has no relevance to this case and contends that, if the State wanted to
introduce evidence of flight, it could have done so without referring to the
warrant by informing the jury that he left Kansas after being told of the Texas
charges and that he was found and arrested by Abilene police officers two
months later.  Ward contends that the Kansas warrant was only evidence of an
extraneous offense and, therefore, was inadmissible.

Ward=s argument is based upon
the principle that flight evidence is admissible if relevant to the offense
under prosecution.  See Bigby v. State, 892 S.W.2d 864, 883 (Tex. Crim.
App. 1994).   Consequently, Ward concedes that the State could introduce
evidence that he left Kansas.  But because the Kansas warrant was for an
unrelated theft charge, Ward contends that its existence and his arrest on that
warrant are not.  The trial court did not abuse its discretion by finding
otherwise.  The jury was not told what charges Ward faced in Kansas but only
that Kansas authorities issued a warrant after he disobeyed their instructions
to remain.  The trial court could reasonably conclude that the mere reference
to a Kansas warrant did not inject evidence of other bad acts but was
contextual evidence.  It was offered during a chronological description of the
Kansas law enforcement officials=
actions and was also mentioned as the basis for Ward=s subsequent arrest.

If
we are incorrect, any error was harmless.  Detective Perkins only briefly
mentioned the Kansas warrant.  The bulk of his testimony concerned his own investigation,
and the clear implication of his testimony is that the Kansas warrant was
issued because Ward fled after learning of the potential Texas charges.  The
brief reference to a Kansas warrant did not put Ward in the position of having
to defend himself from accusations of being a bad person generally or to defend
himself against collateral charges. Instead, the focus remained on the
aggravated sexual assault charges for which he was tried. Issue One is
overruled.  








B. 
Impeachment of the State=s
Outcry Witness.

Ward
next complains that the trial court erred by not allowing him to introduce
evidence that the State=s
outcry witness had previously made false accusations against other family
members.  The State informed the jury during its opening statement that the
minor victim told her Aunt Emily Guerrero that Ward had assaulted her and that
Aunt Emily reported this to CPS.  The State did not call Aunt Emily as a
witness, but Ward sought to introduce evidence that Aunt Emily had previously
falsely accused his stepfather of inappropriate sexual activity and had falsely
accused his brother of physical assault.  Ward contended that the State opened
the door with its opening statement.  The trial court excluded Ward=s evidence because Aunt
Emily had not yet testified.  Subsequently, the trial court also excluded
evidence of her reputation for truthfulness for this same reason.

Ward
acknowledges that impeachment evidence is inadmissible until a witness
testifies to some fact but contends that the excluded evidence was not
impeachment evidence but was offered to rebut the State=s theory that the victim talked to Aunt Emily
and that Aunt Emily then talked to the authorities.  The trial court did not
abuse its discretion by disallowing Ward=s
proffer.  The court could reasonably conclude that, because Aunt Emily was not
a witness, her credibility was not in issue, and, therefore, evidence of prior
false accusations was not relevant.  The trial court could also reasonably
conclude that, even if relevant, allowing evidence of accusations against other
family members could cause confusion.  Issue Two is overruled.  

C. 
Impeachment with a Prior Inconsistent Statement.

The
State called Ward=s
son as a witness.  Ward attempted to impeach him with a prior statement to
CPS.  The State objected and contended that the document Ward was using for
this purpose was not the son=s
sworn statement but was a report written by a CPS worker.  The trial court examined
the CPS document and found that it was primarily the investigator=s or interviewer=s recitation and that there
was one quote attributed to Ward=s
son but that it related to a bite mark.  The trial court then ruled that Ward
could not use it as a prior inconsistent statement.  Ward made a bill of
exception.  Ward=s son
recalled talking to a child welfare person.  He denied telling this individual
that his dad was nice, fun, and playful; that his father never physically
abused him; or that his father was his best friend.  He did tell the worker
that he had never been spanked and testified that he did so because his
paternal grandmother told him not to say anything about his father.








Ward
complains that he was denied the opportunity to confront his son with a prior
inconsistent oral statement.  Ward characterizes the trial court=s ruling as holding that
only a signed, written statement can be used for impeachment purposes.  We
disagree.  The trial court specifically addressed the CPS records because that
was what Ward tendered as an inconsistent statement.  The trial court did not
err by finding that this document did not constitute a statement by Ward=s son.  Tex. R. Evid. 613 allows impeachment
with a prior inconsistent oral statement, but Ward presented no evidence that
his son had made one.  When Ward=s
son denied telling the CPS worker that his father was his best friend, etc., it
was incumbent upon Ward to offer evidence that his son had, such as with
testimony from the CPS worker.  Because Ward did not produce evidence of a
prior inconsistent statement, the trial court did not err.  Issue Three is
overruled.

D. 
Ward=s Motion
for Mistrial.

Ward=s final argument is that
the trial court erred when it denied his motion for mistrial due to improper
jury argument.  During closing argument, the State told the jury:

[Ward=s counsel] said this is the
toughest case to defend because you are charged with a crime and you can get on
B you can get on the
church steps and yell to the heavens, I didn=t
do this, and who is going to believe you?  But he didn=t do that.  He didn=t get on any B

 

Ward objected,
contending this was a reference to his not testifying, and he moved for a
mistrial.  The trial court excused the jury.  The State argued that it was not
referring to his failure to testify but was referring to the fact that Ward was
found hiding in a closet.  The trial court then denied Ward=s motion and instructed the
State to clarify its argument.  When the jury returned, the State continued
with its closing:

When
the Defendant was informed of the charges in Kansas and told of the heinous
nature, at that point he had the opportunity to get on any step he wanted, any
step, the step of the CPS office, the step of the police department, the step
of Emily=s step, and
say, What the hell are you talking about?  What the hell are you doing to my
kids?  He could have done that.  And he didn=t.

 

Ward contends
that the State commented on his failure to testify, that his constitutional
privilege against self-incrimination was violated, and that it deprived him of
a fair trial because it contributed to his conviction.








We
review the denial of a motion for mistrial under an abuse of discretion
standard.  Hawkins  v. State, 135 S.W.3d 72, 76-77 (Tex. Crim. App.
2004).  Under this standard, an appellate court must uphold the trial court=s ruling as long as it is
within the zone of reasonable disagreement.  Wead v. State, 129 S.W.3d
126, 129 (Tex. Crim. App. 2004).  In making its determination as to whether to
grant a mistrial, the trial court determines whether the improper conduct is so
harmful that the case must be redone.  Hawkins, 135 S.W.3d at 76-77. 
Only in extreme circumstances, where the prejudice is incurable, will a
mistrial be required.  Id. 

The
trial court did not abuse its discretion by denying Ward=s motion for mistrial.  The State=s argument did appear
headed to a comment on Ward=s
decision to not testify, and Ward appropriately objected.  However, because
that objection came in the middle of a sentence, the State=s explanation for what it
would have said requires a credibility analysis that the trial court is better
equipped to resolve.  We cannot second-guess the trial court=s apparent decision to
believe that explanation. The State=s
continuation was an appropriate argument, and the trial court could have
reasonably determined that it was sufficient to clarify the State=s position and remove any
suggestion that the jury should hold Ward=s
decision to not testify against him.  Issue Four is overruled.

                                                                    III. 
Holding 

 
The judgment of the trial court is affirmed.

 

 

 

RICK STRANGE

JUSTICE

 

January 29, 2010

Do not publish. 
See Tex. R. App. P.  47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









     [1]This rule provides:

 

Evidence of other crimes, wrongs or acts is not admissible to prove the
character of a person in order to show action in conformity therewith.  It may,
however, be admissible for other purposes, such as proof of motive,
opportunity, intent, preparation, plan, knowledge, identity, or absence of
mistake or accident, provided that upon timely request by the accused in a
criminal case, reasonable notice is given in advance of trial of intent to
introduce in the State=s case-in-chief such evidence other than that arising
in the same transaction.