

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-09-00407-CR

TIMOTHY BAKER                                                    APPELLANT

V.

THE STATE OF TEXAS                                              STATE

------------

## FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY

------------

## MEMORANDUM OPINION[1]

----------

Appellant Timothy Baker appeals his conviction and sentence for aggravated assault on a public servant, and, in a separate motion, he asks us to appoint him new appellate counsel. We affirm the judgment and deny the motion.

Appellant was serving a sixty-year sentence for aggravated robbery when he attacked a prison guard and held her hostage with a "shank" he had fashioned from a padlock. After a brief standoff, other guards overpowered Appellant and

---

[1]*See* Tex. R. App. P. 47.4.

freed the hostage.  Appellant was later tried and convicted for aggravated assault with a deadly weapon on a public servant.  After the jury found him guilty, it assessed his punishment at life in prison.  The trial court sentenced Appellant accordingly.

**Leg irons**

In his first issue, Appellant contends that the trial court abused its discretion by ordering him shackled during trial without a specific finding that the restraints were necessary.

Although Appellant asserts that he was shackled for the entire trial, it is unclear from the record that he was.  But even if he was, the record does not show that he objected to being shackled.  The record during voir dire, opening remarks, and throughout the testimony of the State's first two witnesses is silent on the issue of Appellant's wearing leg restraints.

The first objection Appellant raised concerning his shackles came at the end of the first day of testimony after the State's third witness identified him as the person "wearing all blue, white tennis shoes, leg irons."  At the mention of the leg irons, Appellant's counsel rose and asked to take a matter up outside the presence of the jury.  Once the jury was removed, counsel objected "to the testimony describing [Appellant] as wearing leg irons," but he did not object to his client actually having to wear the restraints.  The trial court sustained the objection, denied the motion for mistrial, and when the jury returned, instructed it to disregard any testimony subsequent to the witness's having identified Appellant in court.[2]

---

[2]There was some discussion about how to instruct the jury without highlighting the fact that Appellant was wearing shackles.  The record reflects

2

Appellant moved for mistrial again on the second day of testimony after one of the jurors saw him in handcuffs on an elevator during a lunch break. At the bench, the trial court instructed the juror not to consider what she had seen as any evidence of Appellant's guilt, and not to convey what she had seen to the other jurors. There is no evidence in the record that she failed to comply with these instructions.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999). An objection must be made as soon as the basis for it becomes apparent or it is untimely. Tex. R. Evid. 103(a)(1); *Lagrone v. State*, 942 S.W.2d 602, 618 (Tex. Crim. App.), *cert. denied*, 522 U.S. 917 (1997); *Polk v. State*, 729 S.W.2d 749, 753 (Tex. Crim. App. 1987). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App.

---

that the witness had pointed to Appellant and stated, "He's sitting to your -- -- your right wearing all blue, white tennis shoes, leg irons, sitting there." The parties and the trial court agreed that the jury should be instructed to disregard any testimony given after Appellant was identified. Presumably, in following the instruction, the jury would have disregarded the verbal description of Appellant given by the witness and would have considered only that the witness had pointed to him.

3

2004). Generally, even constitutional errors are forfeited by failure to object at trial. *Curry v. State,* 910 S.W.2d 490, 496 & n.2 (Tex. Crim. App. 1995); *see also Mendez,* 138 S.W.3d at 342.

The record shows that although Appellant's counsel objected once to *testimony* identifying his client by referring to the fact that he was wearing leg irons, he did not at any time during the trial object to his client actually having to wear them. Because Appellant did not raise a timely objection to having to wear leg restraints during his trial, we hold that he has not preserved the issue for our review. Tex. R. App. P. 33.1(a)(1); *see Mosley*, 983 S.W.2d at 265; *Curry,* 910 S.W.2d at 496; *see also Deck v. Missouri*, 544 U.S. 622, 625, 125 S. Ct. 2007, 2010 (2005) (where the appellant objected to shackles before, during and after voir dire); *Long v. State*, 823 S.W.2d 259, 281–82 (Tex. Crim. App. 1991) (where the appellant objected to wearing shackles both before and after the jury was selected), *cert. denied*, 505 U.S. 1224 (1992).

Although we have held that Appellant failed to preserve a complaint that the trial erred by ordering him shackled during trial, he twice moved for a mistrial on grounds relating to his shackles and each time the trial court denied the motion. And although Appellant does not frame his issue as a complaint that the trial court erred by refusing to grant a mistrial, he mentions the refusals in his brief to support his claim that the trial court abused its discretion by requiring him to remain shackled throughout the trial. In the interests of justice, therefore, we will address the denial of Appellant's two motions for mistrial.

Appellant first moved for a mistrial after the trial court sustained his objection to testimony identifying him by his wearing leg irons and instructed the

4

jury to disregard the testimony. Appellant next moved for a mistrial after the juror who had seen him in the elevator wearing handcuffs was instructed not to consider what she had seen as evidence of Appellant's guilt and not to report what she had seen to the other jurors.

We review a trial court's denial of a motion for mistrial under an abuse of discretion standard and "must uphold the trial court's ruling if it was within the zone of reasonable disagreement." *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007); *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004); *Orr v. State*, 306 S.W.3d 380, 403 (Tex. App.—Fort Worth 2010, no pet.). Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required. *Archie*, 221 S.W.3d at 699; *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). A mistrial is appropriate only for a narrow class of highly prejudicial and incurable errors and may be used to end trial proceedings when the error is "so prejudicial that expenditure of further time and expense would be wasteful and futile." *Hawkins*, 135 S.W.3d at 77 (quoting *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1070 (2000)).

A trial court must balance three factors in deciding whether to grant a motion for mistrial (1) the severity of the misconduct (magnitude of the prejudicial effect); (2) the effectiveness of the curative measures adopted; and (3) the certainty of conviction absent the misconduct. *See Archie*, 221 S.W.3d at 700; *Hawkins*, 135 S.W.3d at 77; *Mosley v. State*, 983 at 259; *Orr*, 306 S.W.3d at n.11.

Here, the instances of "misconduct" were (1) a witness's testimony referring to Appellant's wearing leg irons and (2) a juror seeing Appellant wearing handcuffs on an elevator during a lunch break. We agree that neither of these is

5

proper. However, in this instance, neither is severe. Appellant was on trial for having attacked a prison guard while serving a sixty-year prison sentence for aggravated robbery. The fact that he was a prison inmate at the time of the charged offense was thoroughly discussed by Appellant's counsel during voir dire. It would have come as no surprise to any juror that certain security measures would be taken given the fact that Appellant was an incarcerated felon at the time of the incident for which he was standing trial. Therefore, any prejudicial effect would have been minimal.

Regarding the second factor—the effectiveness of any curative measures—in each instance for which Appellant sought a mistrial the trial court issued prompt and appropriate instructions to disregard. And, in the absence of evidence that they did not, we presume that jurors follow the trial court's instructions. *Orr*, 306 S.W.3d at 405 (citing *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998)). Our presumption is refutable, but the appellant must rebut the presumption by pointing to evidence that the jury failed to follow the trial court's instructions. *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005); *Colburn*, 966 S.W.2d at 520. Here, Appellant has directed us to no evidence that the trial court's instructions were disregarded; therefore, we presume that they were followed.

Finally, the likelihood that Appellant would have been convicted absent the misconduct is very high. He admitted on the stand that he had committed each element of the offense, and in his defense, concocted a nonsensical justification based upon his alleged mistreatment at the hands of some prison guard other than the one whom he attacked. The facts of this case provide the reason for Appellant's conviction, not the fact that he may have been tried in leg restraints.

6

Accordingly, we hold that the trial court acted within its discretion when it denied Appellant's motions for mistrial, and we overrule Appellant's first issue.

**Pro se or Just a Different Lawyer?**

In his second issue, Appellant contends that the trial court committed structural error by refusing to allow him to represent himself at trial. Specifically, he complains that by not allowing him to proceed pro se, the trial court kept him from presenting his own defense strategy in the manner he wanted to present it.

The parties correctly agree that in order to invoke his right to represent himself pro se, a defendant must clearly and unequivocally assert that he wants to represent himself. *See Faretta v. California*, 422 U.S. 806, 835–36, 95 S. Ct. 2525, 2541 (1975); *United States v. Martin*, 790 F.2d 1215, 1218 (5th Cir.), *cert. denied*, 479 U.S. 868 (1986); *Ex parte Winton*, 837 S.W.2d 134, 135 (Tex. Crim. App. 1992). They disagree, however, about whether Appellant unequivocally and timely asserted the right. Appellant contends that he did, whereas the State contends that he just wanted a different lawyer.

The record shows the following:

- The indictment for this case was returned on April 19, 2006.

- On April 26, 2006, Appellant was represented by trial counsel Lendon Ray, who filed a motion for continuance on August 22, 2006.

- On May 14, 2007, Appellant filed a pro se motion with the trial court asking for a new lawyer and declaring that he could not represent himself.

- In a letter filed May 12, 2008, Appellant asked the trial court to "remove my lawyer of record and either allow me to proceed in the above cause 'pro se' or to appoint other counsel."

- On September 30, 2008, the trial court set a pre-trial hearing on Appellant's motion to proceed pro se for October 23, 2008.

7

- On October 17, 2008, this court received a letter from Appellant in which he stated, "I at first asked to represent myself but I read that if I represent myself I can't use ineffective assistance of counsel then on appeal. So I then asked the 89th district judge to appoint new counsel and Judge Mark Price has refused to hear anything I have to say." We also received a letter from Appellant on that date in which he stated, "I am not a lawyer I hardly know what I am doing. I'm sure I'm not doing this right. But I need help. . . . I motioned the court to give me another lawyer since the one I have is not doing his job."

- On October 23, 2008, the date the trial court had set for a hearing on Appellant's motion to proceed pro se, Appellant withdrew his motion to proceed pro se.

- On November 4, 2008, Appellant filed in the trial court a pro se motion entitled, "Motion for Appointment of Effective Counsel," in which he prayed for the appointment of "new and effective counsel."

- On March 18, 2009, Appellant's new trial counsel, Kenneth Nash, received the file. He filed a motion to suppress on June 19, 2009.

- On October 6, 2009, at a pre-trial hearing, Appellant complained about the representation he had received, and stated, "I would like to representative [sic] myself." He also stated, "I've asked the Court to -- -- to -- -- to provide me with other counsel because State Counsel for Offenders is a -- -- is a Division of the Texas Department of Criminal Justice." "There -- -- there's a big conflict of interest here. He works for TDC. I'm being charged by TDC. That's -- -- that's got to be a conflict of interest and I've asked and I came up here before and I asked you, Judge Price, to -- -- to grant me other counsel, which you refused." "I mean, how can you expect me to -- -- to let this man represent me?" At the conclusion of the hearing Appellant asked, "You over – – so you're saying I'm not allowed to defend myself?" The trial judge instructed Appellant that he was to speak through his attorney.

- The case went to a jury, which returned a verdict of guilty and a life sentence.

- On November 20, 2009, Nicolas R. Hughes, appellate counsel for Appellant, filed a notice of appeal.

- On January 6, 2010, on appellate counsel Hughes's motion for leave to withdraw and appoint new counsel, we abated the appeal to the trial court.

- At the abatement hearing, conducted on February 4, 2010, the trial court determined that Appellant was indigent, wished to prosecute his appeal, and did not wish to proceed pro se.

- On February 11, 2010, the trial court substituted Spencer Rowley for Nicolas Hughes as Appellant's appellate counsel.

- On August 2, 2010, Appellant, complaining of appellate counsel Rowley, filed with us a motion to replace Mr. Rowley with another attorney to prosecute his appeal.

Although there are instances in the record of Appellant indicating a desire to represent himself, upon considering the record in its totality, which included numerous instances of his requesting new counsel and actually receiving it once each at trial and on appeal, we cannot say that the record supports a holding that, if he asserted his right to represent himself, the assertion was clear and unequivocal. To the contrary, viewing the record as a whole, the theme that emerges from Appellant's complaints is that he was dissatisfied with every lawyer he was appointed, not that he wanted to represent himself. Consequently, we cannot say that the trial court erred by requiring Appellant to proceed with his appointed counsel. Accordingly, we overrule Appellant's second issue. For the same reason, we deny appellant's motion for new counsel.

Having overruled both of Appellant's issues, we affirm the trial court's judgment and deny Appellant's motion for new counsel.


LEE GABRIEL
JUSTICE

PANEL: LIVINGSTON, C.J.; MEIER and GABRIEL, JJ.

9

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  December 16, 2010