**Affirmed and Opinion filed October 17, 2019.**



In The

# Fourteenth Court of Appeals

### NO. 14-18-00502-CR

**EDWARD JOE TORRES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 184th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1534637**

## OPINION

In this appeal from a conviction for robbery, appellant raises three issues concerning (1) the trial court's denial of his motion for mistrial, (2) the trial court's comments regarding his punishment, and (3) the trial court's admission of certain opinion testimony. For reasons explained more fully below, we overrule all of these issues and affirm the trial court's judgment.

# BACKGROUND

The complainant in this case was robbed in a coordinated attack as she was driving down a residential street. The attack began around midnight when a car passed the complainant and came to a stop directly in front of her. A second vehicle then pulled up from the rear, boxing the complainant in. A man quickly exited the driver's door of the front car, walked towards the complainant, and swung open her door. The man then pressed a gun to the complainant's face and demanded that she give him her purse and her cellphone. After the complainant complied with these demands, the man departed, along with the other vehicle, leaving the complainant physically unharmed.

The complainant raced to a neighbor's house, where she called police. A sheriff's deputy came to her door at roughly 12:30 that morning and questioned her about what was taken and who was responsible. In her description of the robber, the complainant said that the man was short and Hispanic. She also said that she noticed tattoos on his face, even though a part of his face had been concealed with a bandana.

At around 3:30 that same morning, after having previously spoken with the complainant, the deputy was dispatched to a motor vehicle accident in the vicinity of the robbery. Appellant was one of the drivers involved in that accident, and because he matched the physical description of the complainant's robber, the deputy came to suspect that appellant had been involved in that earlier offense. The deputy patted down appellant and found a cellphone in his pocket that matched the cellphone that had been reported stolen by the complainant. The deputy then searched appellant's vehicle and found a social security card bearing the complainant's name. The deputy did not find a purse, a bandana, or a gun in appellant's vehicle, but he did find a knife that was designed to resemble a gun.

The deputy returned to the complainant's home later that morning with the items he found from the motor vehicle accident. The complainant identified the cellphone and social security card as her own. She said that the knife had not been used in her robbery, but she said that it resembled the gun that had been used.

Appellant was charged with aggravated robbery with a deadly weapon. At his trial for that offense, the complainant identified appellant in open court as her robber. The complainant also insisted that appellant had used an actual gun in the aggravated robbery, not a knife, but the jury convicted appellant of just the lesser offense of simple robbery. The jury then assessed appellant's punishment at twenty-two years' imprisonment.

## MOTION FOR MISTRIAL

During the punishment phase of trial, the prosecutor emphasized that appellant was twenty-four years old, that he was a member of a notorious street and prison gang, and that he already had at least one prior robbery conviction. To protect the citizens of the county, the prosecutor encouraged the jury to sentence appellant to a lengthy term of imprisonment. The prosecutor did not suggest any particular term of years, but he did raise the topic of parole eligibility.

The punishment charge already included certain instructions regarding parole eligibility. Those instructions, which are specifically prescribed by statute, informed the jury that some defendants could be released early on parole, but that these defendants "will not become eligible for parole until the actual time served plus any good conduct time earned equals one-fourth of the sentence imposed or fifteen years, whichever is less." *See* Tex. Code Crim. Proc. art. 37.07, § 4(b). The instructions further provided as follows:

> You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good

3

conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

In his summation of these instructions, the prosecutor made the following argument:

> When we talk about parole, I don't want to get too hung up on it, but I want to make sure I explain it so you understand it a little bit. The Judge did a great job already. It's the actual time—[the defendant is] not parole eligible until the actual time served plus any good time earned equals one fourth. So hypothetical, you come back today, you say, you know what? Give him the minimum five years. He is probation— parole, I apologize, parole eligible at 1.25 years. Not saying he will get it. We don't know. But he could be back out in the streets in 1.25 years, plus any good time he has accrued. Does that scare you? It should. It scares me.

Defense counsel objected as follows: "I object to this argument, Judge. The law says you're not supposed to make an argument like this. The jury is not supposed to look at it this way, not the way they're supposed to do it." The trial court overruled the objection, but *sua sponte* advised the jury: "You may consider parole, but do not try to factor in the eligibility of this person. He could receive it, he could be denied parole. It's merely the option that the Board of Pardon and Paroles considers, along with the governor's office."

The prosecutor continued: "You heard that minimum part of it. Come back with say 60, one fourth of that, that's 15. Parole eligible in 15 years."

Defense counsel objected on the same ground as before: "Doing the same thing." But this time, the trial court sustained the objection and told the jury, "Disregard the math process of parole. It's merely an option that may be in his future one way or the other." Counsel then moved for a mistrial, which the trial court denied. Appellant now complains of that ruling in his first issue on appeal.

4

We review a trial court's ruling on a motion for mistrial for an abuse of discretion. *See Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). Because a mistrial is a serious remedy, it should be reserved for only extreme situations of highly prejudicial and incurable misconduct. *Id.* If the trial court could have reasonably determined that the challenged misconduct did not rise to that level, then the trial court's denial of a motion for mistrial must be upheld. *Id.*

Appellant believes that a mistrial was warranted in this case because the prosecutor "argued a hypothetical" on the topic of parole eligibility. But there was nothing improper with the prosecutor's hypothetical argument. The prosecutor was allowed to explain how the rules on parole eligibility would apply towards sentences of varying lengths. *See Taylor v. State*, 233 S.W.3d 356, 359 (Tex. Crim. App. 2007) ("In the case before us, the prosecutor did not convey any information beyond what was properly contained in the charge when he explained how the parole eligibility rules set out in the charge worked with forty, sixty and seventy-five years sentences. The explanation simply ensured that the jury understood the language set out in the instructions."). For that reason alone, there was no prejudicial misconduct that the trial court needed to cure.

Appellant also complains that a mistrial was warranted because the prosecutor said that he was scared about the possibility of appellant's early release. Appellant does not specifically contend in his brief that the prosecutor's invocation of his own personal fears constituted an improper plea for law enforcement (a point that was not preserved in any event). Instead, appellant quotes from *Hawkins v. State*, 135 S.W.3d 72 (Tex. Crim. App. 2004) and contends that the prosecutor's argument was improper because "the jury is simply prohibited from considering how parole law and good time would be applied to a particular defendant." *Id.* at 84. Even if we agreed that the prosecutor's argument was improper, the trial court issued a curative

instruction on this very point: "You may consider parole, but do not try to factor in the eligibility of this person." We presume that the jury followed this instruction, which was sufficient to cure any unfair prejudice stemming from the prosecutor's argument. *See Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998) ("We generally presume the jury follows the trial court's instructions in the manner presented.").

## COMMENTS ON PUNISHMENT

Appellant's next complaint focuses on certain comments that the trial court made on the first morning of trial, before the jury was ever selected. We reproduce those comments here:

Court: It is Mr. Torres's trial date. I extended an offer to Mr. Torres today of 23 years in prison on the charge of aggravated robbery with a deadly weapon. He is enhanced with an alleged prior evading arrest charge, which if found guilty, Mr. Torres, we already talked about this, if that prior conviction that is true, you're looking at a minimum sentence of 15 years, maximum sentence of life in prison, possible fine not to exceed $10,000. I'm guessing if you got a lot of advice from fellow inmates in your block up there about not taking any deals, being tough about these things, my offer today was 23 years because you turned down 20 last time you were here. You have had time to talk to your lawyer today about this issue. Do you choose to accept or reject my offer of 23 years, Mr. Torres?

Appellant: I reject.

Court: You reject. Good for you. The offer on the table is no longer available, Mr. Torres. Mr. Torres, you understand if they do find you guilty, if that prior is true, it's 15 to life. Clear to you?

Appellant: Yes, sir.

Court: You have had time to discuss this with your lawyer. You understand all your options; is that correct, sir?

6

| Appellant: | Yes, sir, Your Honor. |
|---|---|
| Court: | I understand you have chosen to have the jury assess your punishment if they find you guilty; is that correct, sir? |
| Appellant: | Yes, sir. |
| Court: | All right. [Defense counsel], something to add to the record here? |
| Counsel: | No. |
| Court: | All right. Mr. Torres, good luck with this, sir. Let's get this trial started up for you. |

Based on these comments, appellant argues that the trial court failed to consider the full range of punishment, resulting in a deprivation of due process and a violation of this court's decision in *Cabrera v. State*, 513 S.W.3d 35 (Tex. App.— Houston [14th Dist.] 2016, pet. ref'd). But in *Cabrera*, we held that "it is a denial of due process for a trial court to arbitrarily refuse to consider the entire range of punishment for an offense or to refuse to consider the evidence and impose a predetermined punishment." *Id.* at 38. That authority is not applicable here because appellant's punishment was determined by the jury, not by the trial court.

Appellant complains in the alternative that the trial court's comments had the effect of improperly intruding into plea negotiations. On its face, the record does suggest that the trial court may have exceeded its proper role in the process of plea negotiations. *See Moore v. State*, 295 S.W.3d 329, 332 (Tex. Crim. App. 2009) ("The only proper role of the trial court in the plea-bargain process is advising the defendant whether it will 'follow or reject' the bargain between the state and the defendant."). But this complaint was not preserved for appellate review because appellant never objected to the trial court's comments. *See Hallmark v. State*, 541 S.W.3d 167, 170 (Tex. Crim. App. 2017) ("A defendant forfeits error if he fails to object to a trial judge's improper participation in plea negotiations.").

## OPINION TESTIMONY

During the guilt phase of trial, the sheriff's deputy testified that he questioned appellant about the items that were found in appellant's possession but that appeared to belong to the complainant. The testimony led to the following exchange:

Q. So deputy, when you were talking to the defendant, when did he state that he got those items that you presented to the complainant?

A. He stated that he received those items from another person Thursday night into Friday morning.

Q. And when did the aggravated robbery take place?

A. It was actually Sat—I took the report on the 18th, I believe. I want to say that was a—

Q. Was it a Sunday evening going to Monday morning?

A. It was Sunday night. It was Sunday morning when I took the report. So the incident occurred sometime Saturday night into Sunday morning.

Q. So is that in conflict with what he is telling you right there?

A. Yes, it is.

Q. And your opinion, is he lying about when he got these items?

Defense Counsel: Objection, calls for an opinion, Your Honor.

Court: I hear you counsel. Overruled.

A. I took it as he was lying to me.

Appellant now attacks the trial court's ruling on his objection, arguing that the deputy should not have opined on whether appellant was being truthful. Even if we assumed for the sake of argument that the deputy's live opinion testimony was inadmissible, we could not conclude that appellant suffered any harm because the same opinion was admitted elsewhere in the form of a video exhibit.

The video was recorded several hours after appellant's motor vehicle accident, and it documented an interview that was conducted out in the field between just the

deputy and appellant. Though he was not under arrest at the time of the interview, appellant was advised of his constitutional rights, and he agreed to waive those rights and answer the deputy's questions.

The deputy asked appellant how he came to possess the items that were found in his vehicle, and appellant responded that he received the items from a third person several days earlier. The deputy replied, "Edward, I'm not a rookie." Appellant responded, "I wouldn't lie."

An exchange ensued in which the deputy repeatedly expressed his disbelief. The deputy said, "What if I tell you that I don't believe you? What would you say?" Appellant answered, "I wouldn't lie to you, sir."

The deputy pressed further, "What if I told you I don't believe you? What would you tell me then? If I told you, Edward, I want you to think about what you're telling me. I want you to seriously think about what you're saying. Because I don't believe you. What would you say then?" Appellant repeated his earlier answer, "I wouldn't lie to you, sir."

The deputy continued, "What if I tell you I don't believe what you're telling me right now? Not even half of it. Would you say you're lying to me?" Appellant responded, "If I was, I'd say my bad."

Because this video interview was admitted without objection, the deputy's opinion was already before the jury. The deputy's live opinion testimony was merely cumulative of that evidence, which means that any error in its admission was harmless. *See Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999) ("Moreover, any error in admitting the evidence was harmless in light of other properly admitted evidence proving the same fact.").

## CONCLUSION

The trial court's judgment is affirmed.

/s/     Tracy Christopher
Justice

Panel consists of Justices Christopher, Spain, and Poissant.

Publish — Tex. R. App. P. 47.2(b).